FILED
1st JUDICIAL DISTRICT COURT
Santa Fe County
5/14/2019 9:54 PM
STEPHEN T. PACHECO
CLERK OF THE COURT
Michael Roybal

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

VERONICA GARCIA,

              **Plaintiff,**

vs.

DEFENDANT MICHAEL MARTINEZ,
STATE OF NEW MEXICO and its subsidiary
entities, NEW MEXICO CORRECTIONS DEPT.
and WESTERN NEW MEXICO
CORRECTIONAL FACILITY,
DEFENDANT ROBERTA LUCERO ORTEGA,
Warden at the Western New Mexico Correctional
Facility, and DEFENDANT PETE PEREZ, Deputy
Warden at the Western New Mexico Correctional
Facility,

              **Defendants.**

No: D-101-CV-2019-01334
Case assigned to Mathew, Francis J.

## COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS, VIOLATIONS OF THE FIRST AMENDMENT, ASSAULT, BATTERY, AND VIOLATIONS OF THE NEW MEXICO CONSTITUTION UNDER THE NEW MEXICO TORT CLAIMS ACT

    Plaintiff brings this complaint for assault, battery, false imprisonment and violations of the rights afforded to her by the New Mexico Constitution as well as negligent operation of a facility under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1, *et seq.*; and for violations of the rights afforded to her by the U.S. Constitution under 42 U.S.C. § 1983. In support of her Complaint, Plaintiff alleges as follows:

### PARTIES AND JURISDICTION

    1.    Plaintiff is a resident of Bernalillo County, State of New Mexico. At all times relevant hereto, Plaintiff was a female inmate committed to the care and custody of the State of New Mexico and the New Mexico Corrections Department ("NMCD"). At all times relevant to the instant

EXHIBIT A

complaint, Plaintiff was incarcerated in the Western New Mexico Correctional Facility ("WNMCF") in Cibola County, New Mexico, which was operated and managed by the NMCD and the State of New Mexico ("the State").

2. Defendant Michael Martinez was, at all times relevant hereto, a corrections officer working at WNMCF and employed by NMCD and the State.

3. At all times material to this Complaint, Defendant Martinez was acting under color of state law. Defendant Martinez is sued herein in his individual capacity. Upon information and belief, Defendant Martinez is a resident of New Mexico.

4. Defendant Roberta Lucero Ortega was, at all material times, the warden at WNMCF. At all times relevant to this complaint, Defendant Ortega was acting under color of state law. At all times material to this complaint, Defendant Ortega was acting within the course and scope of her employment. Upon information and belief, Defendant Ortega is a resident of New Mexico.

5. The State is responsible for the actions and omissions of Defendant Martinez, the NMCD and the WNMCF, its employees, agents, and representatives.

6. All of the events material to this complaint took place within Cibola County, New Mexico.

7. The State of New Mexico has waived statutory immunity from suit for the tort claims alleged herein. *See* NMSA 1978, §§ 41-4-6 and -12.

8. Venue is proper in this district pursuant to NMSA 1978, § 41-4-18(B).

### FACTUAL BACKGROUND

A. **Sexual Abuse at WNMCF**

9. WNMCF Facility employees, including all corrections officers, knew that there were unmonitored areas where sexual attacks against female inmates could occur without being seen or

2

recorded.

10. Female inmates at the WNMCF were unsafe and at risk of sexual assault by Defendant Martinez and other corrections officers due to existence of unmonitored areas.

11. Corrections officers, supervisory personnel, and all Defendants ignored sexual abuse and sexual assaults that occurred at the hands of corrections officers.

12. By conduct and words, the Defendants, WNMCF corrections officers, supervisory personnel, collectively and individually, threatened hostility, punishment and formal discipline to any inmate that reported abuse.

13. The threats of hostility, harassment, punishment and formal discipline for reporting sexual assault and abuse by the Defendants facilitated and encouraged the abuse and sexual assault against female inmates at WNMCF to continue unabated.

**B.    Sexual Abuse by Defendant Martinez at WNMCF.**

14. While Plaintiff was incarcerated in WNMCF, she was repeatedly sexually assaulted, fondled, and raped by Defendant Martinez—crimes for which Defendant Martinez was charged criminally and sentenced.

15. The forced and coerced sexual abuse and assaults against Ms. Garcia, and at least one other female inmate at WNMCF, occurred while Defendant Martinez was on duty as a corrections officer. Said act constitutes criminal sexual contact and criminal sexual penetration by Defendant Martinez. Defendant's actions constitute felonies under New Mexico state law. *See* NMSA 1978, § 30-9-11.

16. Defendant Martinez targeted Ms. Garcia when she was an inmate at WNMCF.

17. Defendant Martinez sexually attacked Ms. Garcia in areas that both he and the WNMCF staff knew were obscured from video security camera coverage.

3

18. Defendant Martinez raped Ms. Garcia in 2012 while she was incarcerated at WNMCF. Specifically, on or about October 2012, Plaintiff awoke to being fondled by Defendant Martinez. After she awoke, Defendant forced Plaintiff to perform oral sex upon him. This occurred in and by the employee restroom in the educational building at WNMCF.

19. Approximately a week later, Defendant Martinez removed Plaintiff from her cell, took her to another location, and vaginally raped her.

20. In 2012, when Defendant Martinez sexually assaulted Ms. Garcia, she resisted him and told him that she did not consent. In response, Defendant Martinez told Ms. Garcia to "keep her mouth shut if she knew what was best for her."

21. Ms. Garcia believed Defendant Martinez's threat that he would inflict physical harm upon her if she did not acquiesce to his illegal sexual demand or if she attempted to report him.

22. When Ms. Garcia was incarcerated in 2016, Defendant Martinez again had access to sexually assault Ms. Garcia, and he took advantage of the opportunity.

23. Defendant Martinez's past threat of harm caused Ms. Garcia not to report his sexual abuse and assault of her while she was housed at WNMCF although Ms. Garcia wanted to report Defendant Martinez's sexual abuse and assault.

24. Defendant Martinez, however, threatened her again in 2016 and 2017 by telling her not to report him and that no one would believe her. Ms. Garcia again believed that Defendant Martinez would make good on his threats.

25. WNMCF knew that Defendant Martinez and other corrections officers were unmonitored in certain areas of the facility and deliberately ignored the high likelihood and risk of harm to female inmates at the facility for assaults in those areas.

4

26. Defendant Martinez assaulted Ms. Garcia numerous times from December 2016 through approximately the end of June when she was working for the prison in areas that were unmonitored by video cameras.

27. As soon as Ms. Garcia arrived at WNMCF, Defendant Martinez devised ways to keep her under his control and at that particular facility.

28. Defendant Martinez wrote disciplinary complaints up on Ms. Garcia on multiple different occasions in order to ensure access to her at WNMCF.

29. The discipline Defendant Martinez enforced caused Ms. Garcia to be disqualified from being transferred to another facility, Springer, where she would be free from his sexual abuse and assaults.

30. The sexual assaults and abuse against Ms. Garcia by Defendant Martinez occurred in three places:

   a.   near the stairs in the first floor of the control room in O pod in Reception and Diagnostic Center ("RDC");

   b.   near the copy machine in the administrative area; and

   c.   in Ms. Garcia's cell.

31. All of the sexual acts occurred between December 2016 through the end of June, 2017.

32. Specifically, in December 2016, Defendant Martinez forced Ms. Garcia to perform fellatio on him.

33. Defendant Martinez also ordered Ms. Garcia to undress so that he could see her exposed body through video surveillance. On one occasion, between approximately December

5

2016 and February 2017, Defendant Martinez forced Ms. Garcia to remove all of her clothes while she was in her cell in order for him to observe her naked body.

34. Defendant Martinez sexually assaulted Plaintiff several times in RDC on the first floor of the control room near the stairs. Defendant Martinez instructed Ms. Garcia to enter the room and stand in such a way that would avoid the view of the cameras.

35. Ms. Garcia was hired as a Front Administration Porter after she was moved from RDC. She performed maintenance duties in the area where employees worked and in the front lawn. This included the warden's office, the employee lounge, the employee restroom, the conference room, the copy machine and human resources area.

36. On several occasions near the copy machine in June of 2017, Defendant Martinez would find Ms. Garcia and forcefully touch her breasts without her consent. On at least one occasion, he digitally penetrated her vagina with his fingers.

37. Defendant Martinez used his authority over Ms. Garcia, as well as force and coercion, to compel Plaintiff to comply in these sexual acts.

38. Ms. Garcia did not consent to any of the sexual acts of Defendant Martinez, although he ordinarily arranged to give her unwanted and unsolicited "gifts" of some kind, including tobacco.

C. **The Threat of Reporting and Retaliation Against Veronica Garcia for Reporting Sexual Abuse at WNMCF.**

39. Due to Defendant Martinez's threats and fear of retaliation, Ms. Garcia was afraid to report Officer Martinez for violating the Prison Rape Elimination Act ("PREA").

40. Ms. Garcia knew that PREA complaints were not kept confidential and that officers retaliated against inmates who reported PREA violations.

6

41. For example, there was an inmate that became pregnant by one of the corrections officers. The woman then miscarried the baby. Upon information and belief, the corrections officers retaliated against the woman by being abusive to the woman and steeling her journal from her cell in order to thwart her efforts to make a detailed report of the sexual assault and abuse.

42. On approximately June 29, 2017, Ms. Garcia ultimately reported the assaults against her by Defendant Martinez while she was being interviewed as a part of an investigation related to another person's allegations of sexual abuse against Defendant Martinez.

43. Ms. Garcia was also interviewed by the Security Threat Intelligence Unit (STIU). In the interview, Ms. Garcia reported assaults that Defendant Martinez perpetrated upon her.

44. As a result of the interview, the WNMCF disciplinary officer wrote Ms. Garcia up for "Attempting to Engage in or Engaging in an[] Unauthorized or Inappropriate".

45. After her report June 29, 2017 report, Ms. Garcia was not provided with an advocate and she was not allowed to use the phone.

46. Instead, the NMCD employees taking Ms. Garcia's report of abuse by Defendant Martinez told her that she had a consensual relationship with Defendant Martinez and, by their acts and words, made it clear that she was to write her statement and speak about the sexual assault by Defendant Martinez as a "relationship."

47. The Defendants never fully, nor properly investigated Ms. Garcia's allegations against Defendant Martinez.

48. The Disciplinary Officer, Ms. Denise Gonzalez, told Ms. Garcia that she was a "predator" and that she would be put in the predatory pod. She also told Ms. Garcia in anger that Defendant Martinez was seven months from retirement and lost his retirement because of her.

7

Denise Gonzalez told Ms. Garcia that she, Ms. Garcia, was responsible for Defendant Martinez losing his job.

49. After her report of the abuse, Ms. Garcia was immediately retaliated against by WNMCF.

50. As a direct result of her report of assault, Ms. Garcia was punished by losing her good time, approximately one year, losing all privileges (phone, commissary, visits, electronics, etc.). Ultimately, Ms. Garcia spent between approximately 30-45 days longer in prison because of the retaliation and disciplinary report.

51. She was also punished for reporting the assault by being put in segregation for 30 days

52. After Ms. Garcia reported the sexual abuse by Defendant Martinez, WNMCF refused to provide her with her thyroid and anxiety medications.

53. On approximately five occasions, the facility purposely withdrew and withheld her recreation time (1 hour a day out of the cell) while she was in segregation.

54. WNMCF knew that Defendant Martinez and other correctional officers were sexually assaulting women, subjecting them to sexual punishment while incarcerated at WNMCF and they chose to do nothing to stop the sexual violence against women at WNCMF.

55. Defendant Martinez knew exactly where the cameras were and how to avoid being caught on camera during his assaults of Ms. Garcia.

56. Defendant Martinez raped other inmates, including Lisa Jaramillo while she was incarcerated at WNMCF in 2017.

57. Additionally, another corrections officer, Officer Arguello, sexually assaulted and raped inmate Lisa Jaramillo.

8

58. Upon information and belief, several WNMCF employees and supervisors, including Defendant Martinez, Officer Amanza, Officer Garcia and Officer Ross, knew that Officer Arguello was sexually abusing Ms. Jaramillo and did nothing to report the abuse or prevent continued abuse.

59. Defendants' actions proximately caused Plaintiff to suffer damages. Ms. Garcia was severely physically harmed by the repeated assaults against her by Defendant Martinez and she suffered severe emotional and psychological harm, embarrassment, humiliation and anxiety as a direct result of the acts and omissions of the Defendants.

## COUNT I: SEXUAL ASSAULT
### (Pursuant to the New Mexico Tort Claims Act)

60. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

61. During the events described above, Defendant Martinez placed Plaintiff in reasonable fear of imminent batteries, which acts constitute the tort of assault.

62. The assault perpetrated by Defendant Martinez was sexual in nature.

63. Defendant's actions were contrary to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*.

64. The assaults perpetrated against Plaintiff proximately caused her to suffer damages including, but not limited to, physical and emotional pain and suffering.

65. The State and Defendant Roberta Lucero Ortega are vicariously liable for the damages caused to Plaintiff by Defendant Martinez because Defendant Martinez, a corrections officer employee of the State, was aided in accomplishing his assaults by his agency relationship with WNMCF and Ortega who were his employers.

9

66. Defendant Martinez "used the authority vested in him by his position as a corrections officer to coerce" Plaintiff, while she was an inmate "entrusted to his care, into submitting to sexual assault[, sexual battery,] and false imprisonment." As a matter of law, "[n]o affirmative defense of comparative fault is available in this context." *Spurlock v. Martinez*, 2016-NMSC-014, 368 P.3d 1213.

### COUNT II: SEXUAL BATTERY
### (New Mexico Tort Claims Act)

67. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

68. In the course of raping Plaintiff, Defendant Martinez repeatedly touched or applied force to Plaintiff in an unwanted and malicious manner, which acts constitute the tort of battery. Defendant's actions were contrary to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*.

69. The batteries perpetrated against Plaintiff proximately caused her to suffer damages including, but not limited to, physical and emotional pain and suffering.

70. The State and Defendant Roberta Lucero Ortega are vicariously liable for the damages caused to Plaintiff by Defendant Martinez because Defendant Martinez, a corrections officer employee of the State, was aided in accomplishing his assaults by his agency relationship with WNMCF and Ortega who were his employers.

71. Defendant Martinez "used the authority vested in him by his position as a corrections officer to coerce" Plaintiff, while she was an inmate "entrusted to his care, into submitting to sexual assault[, sexual battery,] and false imprisonment." As a matter of law, "[n]o affirmative defense of comparative fault is available in this context." *Spurlock v. Martinez*, 2016-NMSC-014, 368 P.3d 1213.

### COUNT III: FALSE IMPRISONMENT
### (New Mexico Tort Claims Act)

72. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

73. While he was raping Plaintiff, Defendant Martinez intentionally confined and/or restrained Plaintiff without her consent and with knowledge that he had no lawful authority to so detain Plaintiff.

74. Plaintiff was not free to leave and/or Defendant Martinez's actions were such that Plaintiff reasonably believed that she was not free to leave. Plaintiff was therefore falsely imprisoned by Defendant Martinez.

75. Defendant Martinez's actions constitute the torts of false imprisonment were contrary to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*.

76. The State and Defendant Roberta Lucero Ortega are vicariously liable for the damages caused to Plaintiff by Defendant Martinez because Defendant Martinez, a corrections officer employee of the State, was aided in accomplishing his assaults by his agency relationship with WNMCF and Ortega who were his employers.

77. Defendant Martinez "used the authority vested in him by his position as a corrections officer to coerce" Plaintiff, while she was an inmate "entrusted to his care, into submitting to sexual assault[, sexual battery,] and false imprisonment." As a matter of law, "[n]o affirmative defense of comparative fault is available in this context." *Spurlock v. Martinez*, 2016-NMSC-014, 368 P.3d 1213.

11

## COUNT IV: VIOLATION OF THE NEW MEXICO CONSTITUTION
**(New Mexico Tort Claims Act)**

78. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

79. Defendant Martinez's actions as described above deprived Plaintiff of the rights, privileges, and immunities afforded to her under the New Mexico Constitution.

80. The deprivation Plaintiff's rights, privileges, and immunities under the New Mexico Constitution proximately caused Plaintiff to suffer damages.

81. Defendant's actions were contrary to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, *et seq*.

82. The violation of Plaintiff's rights under the New Mexico Constitution caused her to suffer damages, including but not limited to: physical and emotional pain and suffering.

83. The State and Defendant Roberta Lucero Ortega are vicariously liable for the damages caused to Plaintiff by Defendant Martinez because Defendant Martinez, a corrections officer employee of the State, was aided in accomplishing his assaults by his agency relationship with WNMCF and Ortega who were his employers.

84. Defendant Martinez "used the authority vested in him by his position as a corrections officer to" violate Plaintiff's protected rights and privileges while she was an inmate "entrusted to his care." As a matter of law, "[n]o affirmative defense of comparative fault is available in this context." *Spurlock v. Martinez*, 2016-NMSC-014, 368 P.3d 1213.

## COUNT V: VIOLATION OF THE NEW MEXICO CONSTITUTION
**(New Mexico Tort Claims Act)**

85. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

86. Defendants had a duty to maintain the safety of those areas of WNMCF reserved for common use by inmates, as well as all areas where inmates employed by the prison work. See *Callaway v. New Mexico Dept. of Corrections*, 1995-NMCA-049, ¶¶ 13-17, 117 N.M. 637; NMCD Policy 150100; NMCD Policy 032200; NMCD Policy 163000.

87. Contrary to their obligations, The State, Defendant Roberta Lucero Ortega, and Defendant Pete Perez negligently operated and maintained the prison grounds and prison buildings in one or more of the following ways:

    a.    fostering a culture that allows correctional officers to use their positions of power to sexually abuse women in NMCD custody;

    b.    fostering an environment where sexual abuse by correctional officers frequently goes unreported because women in NMCD custody know that their grievances will not be taken seriously or investigated in good faith;

    c.    fostering an environment where sexual abuse by correctional officers frequently goes unreported because the victims of sexual abuse fear retaliation for reporting it;

    d.    fostering an environment where sexual abuse by correctional officers frequently goes unreported because victims fear being charged with having "an inappropriate relationship" with their abusers and receiving harsh punishments like loss of good time;

    e.    fostering an environment where the offending officers are emboldened to become serial offenders by the knowledge that they will not face consequences for their actions and will remain in a position of power over their victims;

    f.    negligently hiring, training, and retaining correctional officers who commit violence and abuse against women in NMCD custody;

    g.    allowing officers such as Defendant Martinez to have extended and unsupervised one-on-one time with female inmates;

    h.    failing to maintain sufficient surveillance camera placement around the WNMCF facility;

    i.    failing to repair broken or non-functional cameras placed around the prison;

    j.    failing to take corrective action against correctional officers when those officers are known and/or suspected to be committing bad acts;

13

  k. failing to properly screen officers entering WNMCF;

  l. creating a system wherein officers are allowed to unilaterally alter inmate work schedules and extend their work hours, thereby providing men such as Defendant Martinez unfettered access to inmates, and unmonitored opportunities to perpetrate sexual assaults against victims such as Plaintiff; and

  m. other negligent acts and/or omissions.

88. Through the aforementioned acts and omissions, The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez failed to exercise due care in operating and maintaining the prison facility.

89. The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez knew or should have known that the aforementioned acts and omissions created a dangerous condition, posing unreasonable risk of harm to women inmates.

90. The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez failed to correct this dangerous condition.

91. It was foreseeable that this dangerous condition would lead to correctional officers taking advantage of and sexually assaulting women in NMCD custody.

92. Given the dangerous condition fostered by The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez, Defendant Martinez's unlawful conduct and sexual abuse of Plaintiff were foreseeable.

93. As a direct and proximate result of the creation and failure to correct a general condition of unreasonable risk at the prison by The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez, Plaintiff and others suffered, and continue to suffer damages.

94. Plaintiff's damages were exacerbated by Defendants' treatment of and retaliation against her after the sexual abuse came to light.

### COUNT VI: CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF EIGHTH AMENDMENT AGAINST DEFENDANT MARTINEZ, THE STATE OF NEW MEXICO, NMCD, DEFENDANT ROBERTA LUCERO ORTEGA, AND DEFENDANT PETE PEREZ
### (42 U.S.C. § 1983)

95. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

96. By and through the actions described above, including both the specific incidents of sexual assault and the continuing, daily threat of renewed assaults, Defendant Martinez violated the Eighth Amendment right of Plaintiff to be free from cruel or unusual punishment. In particular, Defendant Martinez violated Plaintiff's right to be afforded a reasonable degree of safety from serious bodily attack and to be secure in her bodily integrity.

97. The actions of Defendant Martinez in assaulting Plaintiff and violating her clearly established constitutional rights was affected in a manner that was objectively unreasonable, intentional, willful, and wanton, and done in gross and reckless disregard of Plaintiffs' rights.

98. Defendant Martinez's unlawful sexual assaults, his violation of inmates' bodily integrity and right to personal security, and the ongoing threat of further such violations, proximately caused Plaintiffs to suffer damages and injuries. These damages include physical injuries, pain and suffering, lost liberty and psychological and emotional distress.

### COUNT VII: FIRST AMENDMENT RETALIATION AGAINST ALL DEFENDANTS

99. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

100. By and through the actions described above, the Defendants, each of them, violated Ms. Garcia's First Amendment rights by the following actions or omissions:

    a.    Plaintiff engaged in a constitutionally-protected conduct when she asserted her right to free from bodily harm at WNMCF and when she decided to report the sexual abuse and sexual of Defendant Martinez.

    b.    Defendant Martinez caused Ms. Garcia's continued actual and potential future physical and psychological harm because Defendant Martinez' repeated assault on Ms. Garcia and his threats of harm if she reported caused her to be silent to not report his conduct.

    c.    Defendant Martinez' conduct and desire to continue sexually abusing and assaulting Plaintiff motivated him to deter her from reporting his conduct and to continue threatening her.

    d.    The Defendants were motivated to discourage Ms. Garcia and any other female from reporting sexual abuse by actually punishing the reporting person and also threatening the reporter of sexual abuse at WNMCF with sanctions, harassment, hostility, segregation and increased prison time.

101. The actions of Defendant Martinez and the other Defendants in assaulting Plaintiff and threatening her with harm and increased punishment if she reported the harm violating her clearly established constitutional rights was affected in a manner that was objectively unreasonable, intentional, willful, and wanton, and done in gross and reckless disregard of Plaintiff's rights.

102. The actions of Defendant Martinez and the other Defendants caused Plaintiff to suffer injuries which would chill a person of ordinary firmness from reporting the sexual abuse of Defendant Martinez.

103. Defendant Martinez's unlawful sexual assaults, his violation of inmates' bodily integrity and right to personal security, and the ongoing threat of further such violations, proximately caused Plaintiffs to suffer damages and injuries. These damages include physical injuries, pain and suffering, lost liberty and psychological and emotional distress.

16

## COUNT VIII - *MONELL* CLAIM
### (42 U.S.C. § 1983)

104. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

105. The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez created and allowed a danger to Plaintiff and others to persist when it failed to act when it had a mandatory duty to act pursuant to state law.

106. The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez's failure to investigate and to train its correctional officers, NMCD employees and/or and those persons responsible for safely housing women committed to the care and custody of NMCD infringed upon Plaintiff's rights under the Eighth Amendment to the U.S. Constitution.

107. Defendant Martinez, namely his sexual assault of Plaintiff, was a direct consequence of the policies, practices and customs of the State, NMCD, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez.

108. At all times relevant to this Complaint, the State, NMCD, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez had in effect policies, practices and customs that condoned and fostered the unlawful conduct of the Defendant Martinez and others, and were a direct and proximate cause—and were the moving force behind—the violation of Plaintiff's constitutional rights and the damages and injuries alleged herein.

109. The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez are liable for the acts and omissions of its agents and employees which were committed while in the course and scope of their duties and employment and is, therefore, liable for the actions of Defendant Martinez.

110. At all times relevant to this Complaint, the State, Defendant Roberta Lucero Ortega,

17

and/or Defendant Pete Perez failed to implement policies, practices and customs that ensured the prompt and thorough investigation of sexual misconduct by corrections officers at WNMCF, including but not limited to Defendant Martinez and/or deliberately implemented policies to punish and retaliate against victims of sexual abuse by correctional officers at WNMCF.

111. The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez knew, or should have known, that such policies, practices and customs would result in constitutional violations on the part of its correctional officers.

112. The policies, practices and customs complained of herein demonstrate a deliberate indifference on behalf of The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez to the constitutional rights of children within its jurisdiction, and were the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

113. In addition to damages and in order to prevent infringement upon the constitutional rights of women incarcerated under the care and custody of NMCD, Plaintiffs seek the following injunctive relief:

    a.    That the State be required to change its policy and implement a policy that prohibits NMCD agents and employees from interfering with or failing to consider/investigate inmate grievances;

    b.    That the State be required to change its policy and implement a policy that prohibits NMCD agents and employees from retaliating against persons under the custody and care of NMCD who report sexual abuse and/or sexual misconduct by NMCD employees and/or agents;

    c.    That the State be required to change its policy and implement a policy that prohibits NMCD agents and employees from charging persons under the custody and care of NMCD who report sexual abuse and/or sexual misconduct by NMCD employees and/or agents with having "an inappropriate relationship" with their abusers and receiving harsh punishments like loss of good time;

    d.    That the State be required to implement a policy that investigates and metes out punishment to serial sexual abusers employed by NMCD and prevents such abusers from remaining in position of power over their victims;

  e. That the State be required to implement a policy that reasonable screens employees of NMCD, trains them and terminates correctional officers who commit violence and abuse against women in NMCD custody;

  f. That the State be required to implement a policy that that prevents officers such as Defendant Martinez from having extended and unsupervised one-on-one time with female inmates;

  g. That the State be required to implement a policy that requires all NMCD facilities, including WNMCF, to place sufficient surveillance cameras in areas of prisons in which correctional officers are present with inmates;

  h. That the State be required to implement a policy that requires the prompt repair of broken or non-functional cameras placed in all NMCD facilities, including WNMCF;

  i. That the State be required to implement a policy that prohibits the present system wherein officers are allowed to unilaterally and systematically discipline inmates to perpetrate assaults against them;

  j. That the State be required to implement a policy that prohibits the present system wherein officers are allowed to unilaterally alter inmate work schedules and extend their work hours, thereby providing men such as Defendant Martinez unfettered access to inmates, and unmonitored opportunities to perpetrate sexual assaults against victims such as Plaintiff; and

  k. That the State be required to implement such further policies as the Court deems necessary.

114. No public policy prevents the injunctive relief described above, nor would the public interest be harmed thereby.

115. Plaintiff suffered damages, including physical injury and emotional pain and suffering as a direct and proximate result of The State, Defendant Roberta Lucero Ortega, and/or Defendant Pete Perez's failure to protect Plaintiff.

## JURY DEMAND

116. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests:

19

A. Compensatory damages against Defendant Martinez, Defendant Roberta Lucero Ortega, Defendant Pete Perez and The State for the assaults, batteries, and false imprisonment Plaintiff was made to endure at the hands of Defendant Martinez, for the negligent operation of WNMCF, and for violations of the U.S. and New Mexico Constitution;

B. Punitive damages against Defendant Martinez, Defendant Roberta Lucero Ortega, Defendant Pete Perez and The State for the assaults, batteries, and false imprisonment Plaintiff was made to endure at the hands of Defendant Martinez, for the negligent operation of WNMCF, and for violations of the U.S. and New Mexico Constitution; and

C. Attorney's fees and costs incurred in bringing this action.

Respectfully Submitted,

*/s/ Louren Oliveros*
Louren Oliveros
Gorence & Oliveros
300 Central Avenue SW, Suite 1000E
Albuquerque, NM 87106
oliveros@golaw.us
505-244-0214 Telephone
505-244-0888 Facsimile

—and—

**Aequitas Law of New Mexico, LLC**

"Electronically Filed"
/s/ Anna C. Martinez
P.O. Box 25304
Albuquerque, NM 8725
(505) 750-8005
anna@aequitas.pro

Attorneys for Plaintiff