# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

VERONICA GARCIA,

     Plaintiff,

v.                                Case No. 1:19-cv-00641-JAP-LF

DEFENDANT MICHAEL MARTINEZ,
STATE OF NEW MEXICO and its subsidiary
entities, NEW MEXICO CORRECTIONS DEP'T.
and WESTERN NEW MEXICO CORRECTIONAL
FACILITY, DEFENDANT ROBERTA LUCERO-ORTEGA,
Warden at the Western New Mexico Correctional
Facility, and DEFENDANT PETE PEREZ, Deputy
Warden at the Western New Mexico Correctional
Facility,

     Defendants.

## MOTION FOR JUDGMENT ON PLEADINGS WITH RESPECT TO COUNTS I-IV

Defendants, Michael Martinez, State of New Mexico, New Mexico Corrections Department, Western New Mexico Correctional Facility, Roberta Lucero-Ortega, and Pete Perez (respectively, "Martinez", the "State", "NMCD", "WNMCF", "Lucero-Ortega", and "Perez"), through their undersigned counsel, move to dismiss Count I-IV pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). Accepting all of Garcia's allegations as true for purposes of this Motion, the Court must, nonetheless, dismiss Counts I-IV with prejudice on sovereign immunity grounds because:

(1) The New Mexico Tort Claims Act ("NMTCA"), § 41-4-12 ("Section 41-4-12") only waives immunity for the torts alleged in these Counts when they are committed by a law enforcement officer(s) (the "Law Enforcement Waiver");

(2) Neither Martinez nor Lucero-Ortega meet the definition of a "law enforcement officer" as that term is defined at NMSA 1978, § 41-4-3(D), and as it has been construed by the courts; and

(3) The State, NMCD, and Lucero-Ortega cannot be vicariously liable for the tortious conduct at issue in Counts I-IV on the ground that they employed or supervised Martinez if *his* acts do not fall within the scope of the Law Enforcement Waiver.

In view of these facts, no amendatory pleading can cure the defects in Garcia's claims for sexual assault, battery and false imprisonment in Counts I-III or for violation of her state constitutional rights in Count IV. Therefore, the Court may properly dismiss these claims with prejudice as it would be futile to attempt to amend them. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

In further support of this Motion[1] and presentation of these facts and applicable legal authorities, Defendants state as follows:

## I.      RELEVANT FACTS FOR PURPOSES OF RULE 12(c)

The following facts are relevant to Garcia's intentional tort claims for sexual abuse, battery and false imprisonment (Counts I-III, respectively) and her claim for violation of her rights under the New Mexico Constitution (Count IV). They are derived from the (1) well-pled factual allegations in the Complaint, which are to be accepted as true for purposes of a Rule 12(c) Motion, as is the case with a Rule 12(b)(6) Motion for failure to state a claim; and (2) reasonable inferences that can be drawn from the facts alleged in the Complaint, which are to be drawn in Plaintiff's

---

[1] In accord with Local Rule 7.1(a), Defendants contacted Plaintiff's counsel by electronic message ("E-mail") on August 13, 2019 to determine whether Plaintiff would oppose the Motion Plaintiff's counsel advised by E-mail on August 14, 2019 that Plaintiff opposes the Motion and would be moving to remand the action to state court.

favor for purposes of a Rule 12(c) Motion, as is the case with a Rule 12(b)(6) Motion. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("[w]e review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard applicable to a 12(b)(6) dismissal."); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds* by *Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x. 750, 753 (10th Cir. 2013) (a court reviewing a motion for judgment on the pleadings must accept "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same.").

Garcia is a former inmate of the WNMCF (also referred to herein as the "Facility"), which is operated by NMCD. *See* [Doc. 1-1 at ¶¶ 1, 14, 16, 31, and 50] (asserting that Garcia is currently a resident of Bernalillo County but was incarcerated at WNMCF, which is operated by NMCD, in 2012 and again in 2016-2017 and ultimately served 30-45 days longer in prison for reporting unconstitutional conduct in 2017). Martinez was a corrections officer at WNMCF, who was employed by NMCD and the State. [*Id*. at ¶ 2]. Garcia was incarcerated at WCMCF twice; first in 2012, and more recently between December of 2016 and the summer of 2017. [*Id*. at ¶¶ 18-20]. During both of these periods of incarceration at WNMCF, Garcia was repeatedly fondled, sexually assaulted, and raped by Martinez while he was acting in the scope of his duties as a corrections officer at WNMCF [*Id.* at ¶¶ 18-20, 26, 30-31].

For example, on one occasion in October of 2012, Martinez came into Garcia's cell and forced her to perform oral sex on him. [*Id*. at ¶ 19]. A week later, he removed her from her cell and took her to another area of the Facility and raped her. [*Id*. at ¶ 19]. Martinez threatened Garcia with physical harm if she reported him for this misconduct in 2012, telling her to keep her mouth shut if she knew what was good for her. [*Id*. at ¶ 20]. When Garcia was re-incarcerated in 2016,

Martinez began to target her again for sexual assault. He cornered her and sexually assaulted her on numerous occasions when she was performing maintenance work in the employee areas of WNMCF that were not monitored by cameras such as the copy machine area. [*Id*. at ¶¶ 26, 30-31, 34-36]. On several other occasions between 2016 and 2017, Martinez also assaulted Garcia in the control room on the first floor of the Reception and Diagnostic Center, instructing to her stand in such a way that she would be outside the range of the surveillance cameras. [*Id*. at ¶ 34]. Martinez intimidated Garcia into remaining silent about the abuse by telling her no one would believe her. [*Id*. at ¶ 24]. He used his authority as a corrections officer as well as force and coercion to get Garcia to comply with his sexual acts. [*Id*. at ¶ 37]. During this period, Lucero-Ortega was Warden at WNMCF. [*Id*. at ¶ 4].

Garcia was afraid to report CO Martinez for sexual conduct in violation of the Prison Rape Elimination Act ("PREA") because he threatened her with harm, and because she feared reprisals from other WNMCF employees. [*Id.* at ¶ 38]. Garcia kept silent until June 29, 2017, when she was questioned by officers with NMCD's Security Threat Intelligence Unit ("STIU"), who were investigating allegations that CO Martinez had sexually abused another inmate. [*Id*. at ¶¶ 42-43]. Ultimately, Martinez was charged with sexually assaulting and raping Garcia, and was convicted and sentenced. [*Id*. at ¶ 14].

## II.     STANDARDS OF REVIEW FOR RULE 12(c) MOTIONS

Rule 12(b)(6) provides that a party may assert a defense of "failure to state a claim upon which relief may be granted" in response to a pleading. Fed.R.Civ.P. 12(b)(6) (2019). Rule 12(b) provides further that such a defense must be asserted by motion before a responsive pleading is

allowed.[2] *Id*. Thus, technically, after an answer is filed it is too late to file a motion to dismiss for failure to state a claim under which relief can be granted. *See In re Vaughan Co., Realtors*, No. 11-10-10759 JA, 2015 WL 4498748, at *1 (Bankr. D.N.M. July 23, 2015)(discussing how Rule 12(b)(6) is made applicable to adversarial proceedings in bankruptcy under Fed.R.Bankr.P. 7012.3, and noting that Rule12(b)(6) technically precludes a defendant from filing a motion to dismiss for failure to state a claim after an answer has been filed; 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 300–01 (2d ed. 1990) ("[A] post-answer Rule 12(b)(6) motion is untimely.").

Once an answer has been filed, a party seeking to assert the defense of the failure to state a claim upon which relief can be granted should file a motion for judgment on the pleadings under Rule 12(c). *In re Vaughan Co.,* 2015 WL 4498748, at *1; *see* also Fed.R.Civ.P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); Fed.R.Civ.P. 12(h)(2)(B) (providing that a party may raise a defense of  failure to state a claim: "(A) in any pleading allowed or ordered under Rule 7(a); (B) *by a motion under Rule 12(c)*; or (C) at trial.) (emphasis added). *see also Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 n. 2 (10th Cir. 2002) ("Normally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer....  If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings.").

A motion for judgment on the pleadings under Rule 12(c) "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties." *Pena v.*

---

[2] However, the Rule also provides that: "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." *Id*.

*Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."). In evaluating a Rule 12(c) Motion, the court applies the same standard used to decide Rule 12(b)(6) motions to dismiss. *Inge v. McClelland*, 257 F. Supp. 3d 1158, 1161 (D.N.M. 2017), *aff'd*, 725 F. App'x 634 (10th Cir. 2018); *Ward* 321 F.3d at 1266 ("[w]e review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard applicable to a 12(b)(6) dismissal."). Thus, a court evaluating a Rule 12(c) Motion must accept "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Cheslek v. Chase Bank*, No. CV 15-348 JB/WPL, 2016 WL 10538737, at *1 (D.N.M. Jan. 20, 2016) (quoting *Park Univ. Enters.*, 442 F.3d at 1244).

For purposes of deciding motions under Rule 12(b)(6) and Rule 12(c) motions, "courts typically consider only the facts alleged in the complaint." *Willis v. Smith*, No. 16 CV 167 JAP/LF, 2017 WL 2963873, at *1 (D.N.M. Feb. 13, 2017) (citing *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002)). However, that said, in deciding Rule 12(b)(6) motions and/or Rule 12(c) Motions, courts may review documents referred to in a complaint, if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity. *Id*. Additionally, courts may also take judicial notice of documents that are in the public record. *Id*. (citing *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1190 (D.N.M. 2013)).

## III.   ARGUMENT

### A.   Neither Martinez nor Lucero-Ortega qualify as a "law enforcement officer" in order to hold them directly liable for an intentional tort or state constitutional claim under Section 41-4-12.

The State is immune from suits for damages caused by the tortious conduct of a public employee(s) while acting in the scope of his/her duties unless the NMTCA waives immunity for a particular tort. NMSA 1978, § 41–4–4(A); *Encinias v. Whitener Law Firm, P.A*., 2013-NMSC-045, ¶ 9. 616. The NMTCA sets forth eight separate waivers of immunity or exceptions to sovereign immunity.  NMSA 1978, § 41-4-4(A) (authorizing exceptions to immunity at Sections 41-4-5 to -12). Accordingly, "[a] plaintiff may not sue a New Mexico governmental entity, or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions to immunity that the NMTCA grants. *See Begay v. State*, 1985–NMCA–117, ¶ 10, 104 N.M. 483 ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds by *Smialek v. Begay*, 1986–NMSC–049, 104 N.M. 375.

Garcia asserts that the State has waived immunity from suit for the tort claims alleged in the Complaint, and cites to two different waiver provisions in the NMTCA: NMSA 1978, § 41-4-6 and § 41-4-12. [Doc. 1-1 at ¶ 7]. The former provision at Section 41–4–6(A), waives the State's immunity for injury "caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." NMSA 1978, §41-4-6(A). This Section "may appropriately be termed a 'premises liability' statute." *Bober v. N.M. State Fair*, 1991–NMSC–031, ¶ 27, 111 N.M. 644. It is implicated where "due to the alleged negligence of public employees, an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." [3]*Rivera v.*

---

[3] Garcia alleges in Count V that Defendants negligently operated and maintained the prison grounds and buildings at WNMCF in various ways that put female inmates at risk for sexual abuse by guards. *See* [Doc. 1-1 at ¶¶ 87, 90-93]. Although Garcia captions Count V as a tort claim for violation of her rights under the New Mexico

*King*, 1988-NMCA-093, ¶ 33, 108 N.M. 5.

The other provision Garcia cites is known as the Law Enforcement Waiver because it applies only to a particular group of public employees, to wit, law enforcement officers. *Hernandez v. City of Albuquerque*, No. CV 14-964 KG/SCY, 2017 WL 3081840, at *6 (D.N.M. June 27, 2017) ("The statutory waiver of immunity for 'law enforcement officers' requires that the defendant be a law enforcement officer as the statute defines the phrase."). Notably, the Law Enforcement Waiver is the *only* waiver that applies where an injury arises from assault, battery or false imprisonment or from violations of an individual's constitutional rights. *Compare* NMSA 1978, §§ 41-4-5 to -11 (waiving immunity where injury is caused by the "negligence" of public employee in the context of operating motor vehicles, aircraft or watercraft; operating or maintaining buildings, parks, equipment, machinery, and furnishings; operating airports; operating public utilities, operating medical facilities; providing healthcare services; constructing or maintaining bridges, culverts, highways, roads, streets, alleys, sidewalks or parking areas) *with* NMSA 1978 § 41-4-12 (waiving immunity where injury arises from one of eight-specifically enumerated intentional torts such as, inter alia, assault, battery and false imprisonment, or from the deprivation of any rights, privileges or immunities secured by the state or federal constitution);

[4] *see also Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. CV 05-972 JH/DJS, 2009 WL

---

Constitution, it is reasonable to construe this as a claim that relies on the waiver of immunity at Section 41-4-6. Allegations of negligence in the operation or maintenance of a building or equipment form no part of the allegations in Counts I-IV. Thus, these particular allegations regarding inmate safety and Count V are not addressed here, but will be the subject of a motion for summary judgment on the applicability of the premises liability waiver at Section 41-4-6.

[4] This Section of the NMTCA also waives immunity where a law enforcement officer's negligence causes an individual to suffer one of the enumerated intentional torts at the hands of a third party. *See Oliveros v. Mitchell*, 449 F.3d 1091, 1096 (10th Cir. 2006) ("Section 41–4–12 of the NMTCA "provides a waiver of immunity for certain torts committed by law enforcement officers and for negligence that causes a specified tort.") (citation omitted); *Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 39, 144 N.M. 314 "[W]ith respect to the torts enumerated in Section 41–4–

10707078, at *2 (D.N.M. Aug. 19, 2009) ("[T]he New Mexico Tort Claims Act does not waive immunity for intentional torts committed by public employees who are not members of law enforcement.") (citing, e.g., *Tate v. Fish*, 347 F. Supp.2d 1049, 1058-59 (D.N.M. 2004)); *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1250-52 (10th Cir. 2006) (affirming dismissal of a state tort claim against the District Attorney's Office and the Chief Inspector for that Office alleging violation of plaintiff's state constitutional rights, and finding neither defendant met the definition of a law enforcement officer so as to bring the claim within the Law Enforcement Waiver).

There is no question that claims for assault, battery and false imprisonment are intentional torts. *See* Restatement (Second) of Torts, Ch. 2, §§ 13, 21, 35 (1965) (Intentional Invasions in Interests in Personality, defining, respectively, the intentional torts of battery, assault and false imprisonment). And although Garcia does not identify specifically *which* right, privilege or immunity is at issue on Count IV, it is reasonable to construe this Count as a claim for deprivation of her right to be free of cruel and inhuman punishment under Article II, Section 13 of the New Mexico constitution. This Section of our state constitution mirrors the Eighth Amendment of the federal constitution almost word for word. *State v. Rueda*, 1999-NMCA-033, ¶ 8, 126 N.M. 738 ("A comparison of the language of the Eighth Amendment of the United States Constitution and Article II, Section 13 of the New Mexico State Constitution reveals that the two constitutional provisions relating to the prohibition against cruel and unusual punishment are nearly identical in

---

12, allegations of negligence are appropriate only to the extent that a law enforcement officer's negligence is alleged to have caused a third party to commit one of the specified intentional torts."). Such allegations form no part of the claims asserted in Counts I-IV. Moreover, even if such allegations formed part of the claims in Counts I-IV, Garcia would still have to identify a law enforcement officer whose negligence led her to suffer assault, battery and false imprisonment at the hands of a third party in order to bring the claims within the scope of the waiver at Section 41-4-12.

their wording."); *Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1252, 1255 (D.N.M. 1998), *aff'd*, 191 F.3d 1281 (10th Cir. 1999) ("[T]he Eighth Amendment imposes duties on prison officials, that must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' Specifically, being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society.") (internal citations omitted).

        In view of these facts, if Garcia is to proceed with the claims in Counts I-IV, she will have to allege[5] and ultimately show that Martinez and Lucero-Ortega qualify as law enforcement officers for purposes of Section 41-4-12. *Lucero v. Olivas*, No. CIV-14-00393-KG-KK, 2016 WL 9778269, at *5 (D.N.M. Sept. 21, 2016) ("[I]n order to state a claim under Section 41–4–12, a plaintiff must show that a defendant was a law enforcement officer acting within the scope of his/her duty, and that the plaintiff's injuries arose out of either the deprivation of a right secured by law or an enumerated tort in Section 41–4–12.") (citing *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996–NMSC–021 ¶ 7, 916 P.2d 1313);

        Herein lies the insurmountable problem with Counts I-IV, neither Martinez nor Lucero-Ortega meet the definition of a "law enforcement officer" for purposes of the waiver of immunity at Section 41-4-12. The NMTCA defines a "law enforcement officer" as

> [A] full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody *any person accused of a criminal offense*, to maintain public order or *to make arrests for crimes*, or members of the national guard when called to active duty by the governor.

NMSA 1978, § 41-4-3(D) (emphasis added).

---

[5] Garcia does not actually allege in the Complaint that either of these Defendants are law enforcement officers for purposes of the waiver at Section 41-4-12. *See* [Doc. 1-1, generally].

It is black-letter law that corrections officers at state *post-conviction* facilities in New Mexico are not law enforcement officers for purposes of the NMTCA. This is because the principal duties of state corrections officers are to hold persons who have been *convicted of a crime* in custody, and not to exercise custody over pre-trial detainees as officers at detentions centers or county jails do. *See, e.g., Peña v. Greffet*, 110 F. Supp. 3d 1103, 1136–37 (D.N.M. 2015) (noting how "jail" guards who work at state detention facilities where the majority of the inmates stand *accused* but *not convicted* of a crime are *not* immune to most intentional tort claims such as claims for assault and battery under the NMTCA whereas, those who work at actual prisons or penitentiaries where the majority of prisoners are serving out a sentence have nearly absolute immunity[6] under the NMTCA because they are not law enforcement officers); *see also Callaway v. N.M. Dep't of Corr.*, 1994–NMCA–049, ¶¶ 11-12, 117 N.M. 637, *cert. denied*, 118 N.M. 90, 879 P.2d 91 (determining that corrections officers at a state prison are not law enforcement officers even though they have the supplemental power to arrest because their principal duties[7] are to hold in custody persons who have already been convicted rather than merely accused of a criminal offense and maintenance of public order relates to a public not a penitentiary setting).

This distinction applies not only to guards at detention and correctional facilities, but also to the supervisors who oversee such facilities. For example, in *Davis v. Bd. of Cnty. Comm'rs of*

---

[6] As the Court explains in *Peña*: "Immunity is limited to the guard's 'scope of duties,' but that term is not synonymous with the common-law concept of 'scope of employment'" *Peña*, 110 F. Supp. 3d at 1137 n.18. This is due to the fact that: "under standard agency principles, an employee's scope of employment generally excludes all intentionally tortious conduct, per se; [whereas] a guard's 'scope of duties,' on the other hand, includes almost everything he or she does at the facility. *Id*. (citing *Risk Mgmt. Div., Dep't of Fin. & Admin., State v. McBrayer*, 2000–NMCA–104, ¶¶ 8–23, 129 N.M. 778).

[7] It is the nature of the employee's principal duty(ies), that is determinative, not whether the employee has any law enforcement powers. *See, e.g., Vigil v. Martinez*, 119—NMCA-093, ¶¶ 17-22, 832 P.2d 405, (holding that probation and parole officers were not "law enforcement officers"; although they occasionally held persons in custody and had some powers of arrest, neither of these acts comprised their principal duty.).

*Dona Ana Cnty.*, 1999–NMCA–110, ¶ 35, the Court noted "It is settled New Mexico law that directors of a county detention center, in which the inmates are primarily 'accused of a criminal offense' and awaiting trial, fall within the definition of law enforcement officers under the Act [the NMTCA]." Accordingly, the Court held in *Davis* that a director and assistant director of a detention center qualified as law enforcement officers on this basis and could be held liable for negligent misrepresentation[8] regarding the qualifications of a former guard. *Id*. In contrast, when the New Mexico Supreme Court was asked on a certified question from the U.S. District Court for the District of New Mexico to say whether the Secretary of NMCD and the Warden at the State Penitentiary were law enforcement officers under Section 41-4-12, it found they were not. *Anchondo v. Corr. Dep't*, 1983-NMSC-051, ¶ 1, 100 N.M. 108.

More specifically, the New Mexico Supreme Court determined that the duties of the Secretary and the Warden were administrative in nature rather than custodial and these officers did not possess the authority to make arrests as a Sheriff overseeing a county detention facility would. *See Anchondo* 1983-NMSC-051, ¶¶ 6-7 (citing New Mexico Statutes, Sections 9–3–12, and 33–2–1 through 33–2–47, which specifically refer to the Warden and his duties such as keeping a register of prisoners, keeping accounts collecting and disbursing funds due the penitentiary, keeping a record book of infractions of prison rules and regulations, assisting with the classification committee in determining meritorious deductions, and instituting an inmate-release program  and concluding that "It is evident from these statutory provisions that the

---

[8] The guard was subsequently hired by a hospital in reliance on the positive recommendation of his former supervisors at the detention center. However, one of the supervisors had initiated disciplinary proceedings against the guard for sexual harassment of female inmates held at the detention center and the other knew of these allegations. *Id.* at ¶¶ 4-9. When the former guard sexually assaulted a psychiatric patient at the hospital, the patient sued supervisors at the detention center, arguing the NMTCA waived immunity for their negligent misrepresentation under Section 41-4-12 as it caused her to suffer assault by a third party. *Id.* at ¶¶ 2-3, 10.

Warden's primary duties and responsibilities, like those of the Secretary of Corrections, are administrative in nature" and that "neither the Secretary of Corrections nor the Warden engage in any of the traditional duties of 'law enforcement officers' " such as managing the daily custodial care of prison inmates, making arrests or taking people into custody for violation of public order occur.).

In the case at hand there is no need as there is in some other cases to analyze whether Martinez' and/or Lucero-Ortega's principal duties qualify them as "law enforcement officer[s]" under Section 41–4–3(D). *See, e.g., Montes v. Gallegos*, 812 F. Supp. 1165, 1172 (D.N.M. 1992) (noting the proper approach to determining whether a mayor is a law enforcement officer for purposes of a state tort claim for unlawful arrest (false imprisonment) under Section 41-4-12 it to "look at the character of the principal duties involved, those duties to which employees devote the majority of their time claim."). Such an analysis has already been performed with respect to state corrections officers and state prison wardens under *Callaway* and *Anchondo*, and no federal court presented with the same issue has ever found otherwise. *See, e.g., Lymon v. Aramark Corporation*, 728 F.Supp.2d 1222, 1269-70 (D.N.M. 2010), *aff'd*, 499 F. App'x 771 (10th Cir. 2012) (relying on *Callaway* to decide that the waiver of immunity at Section 41-4-12 does not apply to corrections officers at state penitentiary because, inter alia, their principal duties do not fall within the statutory definition of law enforcement officers). Thus, the Court may properly dismiss Counts I-IV pursuant to Rule 12(c) because there is no dispute as to the positions Martinez and Lucero-Ortega occupied at WNMCF where the alleged assaults, battery, false imprisonment and state constitutional violations occurred. One was a corrections officer at WNMCF; the other was the Warden. Neither one, as a matter of law, constitutes someone whose principal duties are those of a law enforcement nature. Consequently, Garcia cannot bring intentional tort claims or a claim for

deprivation of her state constitutional rights against either Martinez or Lucero-Ortega on a direct theory of liability.

> **B.** **Neither the State nor Lucero-Ortega or any other Defendant having supervisory authority for Martinez can be vicariously liable for Martinez' alleged tortious acts and constitutional violations because his conduct does not fall within a waiver of immunity.**

Garcia alleges in Counts I-IV that the State and Lucero-Ortega are vicariously liable for Martinez' intentionally tortious and unconstitutional conduct under the "aided-in-agency" theory. Defendants do not agree that this theory of liability applies when a plaintiff asserts intentional tort claims against *public* entities and employees under the NMTCA. The theory developed as an exception to the rule that "[A]n employer is not generally liable for an employee's intentional torts because an employee who intentionally injures another individual is generally considered to be acting outside the scope of his or her employment." *See Ocana v. Am. Furniture Co.*, 2004–NMSC–018, ¶ 29, 135 N.M. 539. However, a public employer is liable for a public employee's conduct under the NMTCA if the employee committed a tortious act for which immunity has been waived while the employee was acting in the "scope of his duties". *Silva v. State*, 1987-NMSC-107, ¶ 15, 745 P.2d at 385 ("[a] governmental entity is not immune from liability for any tort of its employee acting within the *scope of duties* for which immunity is waived").

"Scope of duties" is not the same as "scope of employment." *See* NMSA 1978, § 41–4–3(G) (" '[S]cope of duty' means performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance[.]"); *see also Seeds v. Lucero*, 2005-NMCA-067, ¶ 10, 137 N.M. 589 ("Our case law establishes that a public employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal.") (citing *Risk Mgmt. Div.*

*v. McBrayer*, 2000–NMCA–104, ¶¶ 12, 17, 129 N.M. 778); *Celaya v. Hall*, 2004–NMSC–005, ¶¶ 25-26, 135 N.M. 115 ("the [NM]TCA clearly contemplates including [those] who abuse their officially authorized duties, even to the extent of some tortious and criminal activity" as long as there is "a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform.").

In other words, it isn't necessary to invoke this doctrine in order to hold the state or a state governmental entity vicariously liable under the NMTCA for a public employee's alleged torts. The New Mexico Supreme Court confirmed long ago in *Silva v. State*, 1987-NMSC-107, ¶ 15, 745 P.2d at 385, that the tort doctrine of respondeat superior is applicable to NMTCA claims. *See id*. ("[a] governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived" and thus, "[w]hen the act of the employee is the act of the public entity, let the master answer."); *see also Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶¶ 14-15, 121 N.M. 646 (noting that "absent a claim that the officer w[as] acting outside the scope of [his] authority," the entity having supervisory responsibility for the officer "may be held vicariously liable for any alleged torts committed by the officer[s] for which immunity has been waived.").

There are only two things that are necessary to name the state or a state governmental entity as a defendant under the NMTCA:

> (1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee. *If a public employee meets an exception to immunity*, then the particular entity that supervises the employee can be named as a defendant in an action under the [New Mexico] Tort Claims Act. If the city or state directly supervises the employee, then the city or state can be named.

*Silva*, 1987-NMSC-107, ¶ 15 (internal citation and quotation omitted) (emphasis added); *see also Malone v. Bd. of Cty. Commissioners for the Cty. of Ana*, No. CIV 15-0876 JB/GBW, 2016 WL 5400381, at *65 (D.N.M. Aug. 27, 2016), *rev'd in part sub nom. Malone v. Bd. of Cty. Commissioners for Cty. of Doňa Ana*, 707 F. App'x 552 (10th Cir. 2017) (noting that there are only two requirements for holding the County vicariously liable for the tortious conduct of its employee: (i) the employee must be a public employee who meets one of the waiver exceptions under §§ 41-4-5 to -12; and (2) the County must have had immediate supervisory responsibilities over the employee) (citing *Silva*, 1987-NMSC-107, ¶¶ 15-16): *Valencia v. De Luca*, No. 13 CV 930 JAP/WPL, 2014 WL 11430951, at *21 (D.N.M. Aug. 26, 2014), aff'd, 612 F. Appx 512 (10th Cir. 2015).

Counts I-IV fail to state a claim for vicarious liability against the State and Lucero-Ortega because the employee who allegedly committed the tortious acts that give rise to such liability does not meet the Law Enforcement Waiver. It is simple as that. *See, e.g., Hernandez v. City of Albuquerque*, No. CV 14-964 KG/SCY, 2017 WL 3081840, at *4–5 (D.N.M. June 27, 2017) (finding that plaintiff's NMTCA claims against the City fail "as a matter of law" because the City only faces liability if its employees are liable, and the City employees named in the NMTCA claims "do not fit any statutory waiver" and concluding therefore, where the defendant public employees are immune, so too is the City immune).

Garcia's allegations that Martinez was "aided in agency" to accomplish the intentionally tortious and unconstitutional acts asserted in Counts I-IV cannot salvage Garcia's vicarious liability claims against the State or Lucero-Ortega.[9]

**WHEREFORE**, Defendants ask that the Court dismiss Counts I-IV with prejudice.

Respectfully submitted,

ROBLES, RAEL & ANAYA, P.C.


By: /s/ Luis Robles
Luis Robles
Marcus J. Rael, Jr.
Attorneys for Defendants
500 Marquette Ave., NW, Suite 700
Albuquerque, New Mexico 87102
(505) 242-2228
(505) 242-1106 (facsimile)
luis@roblesrael.com
marcus@roblesrael.com

---

[9] Lucero is not, of course, a state governmental entity. Garcia alleges that NMCD is the state entity that is responsible for operating and managing WNMCF. [Doc. 1-1 at ¶ 1]. Even if Garcia were to amend Counts I-IV to allege that NMCD is vicariously liable for Martinez' conduct, it would not cure the defects with these claims.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September, 2019, I filed the foregoing Motion to Dismiss Counts I-IV electronically via the Court's CM/ECF system which caused all counsel of record to be served with an electronic copy of this Motion.

/s/ Luis Robles
Luis Robles
