IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA GARCIA,

    Plaintiff,

v.                                                  Case No. 1:19-cv-00641-JAP-LF

DEFENDANT MICHAEL MARTINEZ,
STATE OF NEW MEXICO and its subsidiary
entities, NEW MEXICO CORRECTIONS DEP'T.
and WESTERN NEW MEXICO CORRECTIONAL
FACILITY, DEFENDANT ROBERTA LUCERO-ORTEGA,
Warden at the Western New Mexico Correctional
Facility, and DEFENDANT PETE PEREZ, Deputy
Warden at the Western New Mexico Correctional
Facility,

    Defendants.

## MOTION TO DISMISS COUNT VIII

Defendants, Michael Martinez, State of New Mexico, New Mexico Corrections Department, Western New Mexico Correctional Facility, Roberta Lucero-Ortega, and Pete Perez (respectively, the "State", "NMCD", "WNMCF", "Lucero-Ortega", and "Perez"), through their undersigned counsel, move to dismiss Count VIII of the Complaint pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") and Rule 12(b)(1). Count VIII asserts a "Monell" claim against the State pursuant to 42 U.S.C. § 1983 ("Section 1983") and also requests prospective injunctive relief to prevent any future infringement on the constitutional rights of female prisoners in state custody.

Both of these claims for relief are subject to dismissal under Rule 12(b) because:

(1) The State is not a "person" for purposes of Section 1983, and cannot be subject to a Monell claim for monetary damages under Section 1983 as a local

> government can. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); and
>
> (2) Given that Plaintiff is no longer incarcerated in a state prison, and has not alleged she is at imminent risk of being incarcerated again, she lacks standing to seek prospective injunctive relief against a state officer. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106, 110 (1983) (holding that a plaintiff who had been subjected to a chokehold during a traffic stop lacked standing to seek prospective injunctive relief against the city and its police officers because any claim that he was at imminent risk of being stopped again by police, whether for questioning, a citation or an arrest, and that they would violate his constitutional rights the same way was too speculative).

Accordingly, as a matter of law, Plaintiff is unable to bring a Section 1983 claim for monetary damages claim against the State. Therefore, the claim should be dismissed with prejudice under Fed.R.Civ. P. 12(c). As to her claim for prospective injunctive relief against the State or its officers, Plaintiff lacks standing to seek such relief. Because standing is a jurisdictional requirement, this claim should be dismissed without prejudice and without leave to amend[1] pursuant to Fed.R.Civ.P.12(b)(1) ("Rule 12(b)(1)").

In further support of this Motion, Defendants state as follows:

**I.     RELEVANT FACTS FOR PURPOSES OF RULE 12(b)(6) AND 12(b)(1)**

The following summary is derived from the (1) well-pled factual allegations in the Complaint, which are to be accepted as true for purposes of a Rule 12(c) Motion; and (2) reasonable inferences that can be drawn from the facts alleged in the Complaint, which are to be drawn in Plaintiff's favor for purposes of a Rule 12(c) Motion. Likewise, the allegations of the Complaint are to be accepted as true for purposes of a motion to dismiss for lack of standing under

---

[1] In accord with Local Rule 7.1(a), Defendants contacted Plaintiff's counsel by electronic message ("E-mail") on August 13, 2019 to determine whether Plaintiff would oppose the Motion Plaintiff's counsel advised by E-mail on August 14, 2019 that Plaintiff opposes the Motion and would be moving to remand the action to state court.

Rule 12(b)(1). *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (noting that if a party "make[s] a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint", the district court "must accept the allegations in the complaint as true."

### A.   General Factual Allegations

Plaintiff Veronica Garcia ("Garcia") is a former inmate of the Western New Mexico Correctional Facility ("WNMCF" or the "Facility"), which is operated by NMCD. *See* [Doc. 1-1 at ¶¶ 1, 14, 16, 31, and 50] (asserting that Garcia is currently a resident of Bernalillo County but was incarcerated at WNMCF, which is operated by NMCD, in 2012 and again in 2016-2017 and ultimately served 30-45 days longer in prison for reporting unconstitutional conduct in 2017). Garcia was incarcerated at WCMCF twice; first in 2012, and more recently between December of 2016 and the summer of 2017. [*Id*. at ¶¶ 18-20]. During both of these periods of incarceration at WNMCF, Garcia was repeatedly fondled, sexually assaulted, and raped by then-WNMCF corrections officer Michael Martinez ("CO Martinez"). [*Id*. at ¶¶ 18-20, 26].

WNMCF employees, including corrections officers, knew that there were certain areas of the Facility that were obscured from view of video surveillance cameras. [*Id*. at ¶¶ 9, 17]. Specifically, there were no surveillance video cameras in the employee restroom in the educational building, individual inmate cells, the copy machine in the administrative area, or in the stairwell area near the control room in the Reception and Diagnostic Center ("RDC"). [*Id*. at ¶¶ 18, 30(a)-(c)]. Consequently, female inmates were at high risk of being sexually assaulted in these unmonitored areas of WNMCF. [*Id*. at ¶¶ 10, 25]. WNMCF supervisors knew that female inmates were at risk of being sexually assaulted by corrections officers in areas of the Facility that were not monitored by video surveillance, but ignored the risk. [*Id*. at ¶ 25]. As a result, CO Martinez

3

was able to repeatedly sexually assault and rape Garcia in these sorts of areas in 2012 and again in 2016 and 2017. [*Id*.at ¶¶18, 30].

For example, on one occasion in October of 2012, CO Martinez came into Garcia's cell and forced her to perform oral sex on him. [*Id.* at ¶ 19]. A week later, he removed her from her cell and took her to another area of the Facility and raped her. [*Id.* at ¶ 19]. CO Martinez threatened Garcia with physical harm if she reported him for this misconduct in 2012, telling her to keep her mouth shut if she knew what was good for her. [*Id.* at ¶ 20]. When she was incarcerated anew in 2016, CO Martinez began to target her again for sexual assault. He cornered her and sexually assaulted her on numerous occasions when she was performing maintenance work in the employee areas of WNMCF that were not monitored by cameras such as the copy machine area. [*Id*. at ¶¶ 26, 30-31, 34-36]. On several other occasions between 2016 and 2017, CO Martinez also assaulted Garcia in the control room on the first floor of the RDC, instructing her to stand in such a way that she would be outside the range of the surveillance cameras. [*Id*. at ¶ 34]. CO Martinez intimidated Garcia into remaining silent about the abuse by telling her no one would believe her. [*Id*. at ¶ 24]. He used his authority as a corrections officer as well as force and coercion to get Garcia to comply with his sexual acts. [*Id*. at ¶ 37].

Garcia was afraid to report CO Martinez for sexual conduct in violation of the Prison Rape Elimination Act ("PREA") not only because he threatened her with harm, but also because she feared reprisals from other WNMCF employees. [*Id.* at ¶ 38]. Garcia knew that PREA reports were not kept confidential and other prison employees would retaliate against her if she reported CO Martinez [*Id*.]. Garcia believed these reports because she heard of a particular instance where an inmate who had been impregnated by a correctional officer was subject to retaliation by other WNMCF officers. [*Id*. at ¶ 41]. Officers reportedly stole the inmate's journal to thwart her from

making a detailed report on the abuse by one of their fellows, and were abusive to her. [*Id*.]. For all these reasons, Garcia kept silent until June 29, 2017, when she was questioned by officers with NMCD's Security Threat Intelligence Unit ("STIU"), who were investigating allegations that CO Martinez had sexually abused another inmate. [*Id*. at ¶¶ 42-43].

NMCD employees failed to adequately investigate Garcia's allegations of sexual abuse by CO Martinez, and tried to characterize the sexual abuse as consensual conduct. [*Id*. at ¶¶ 46-47]. Garcia was written up by a prison Disciplinary Officer for attempting to engage in or engaging in unauthorized sexual conduct, and denied an advocate during the PREA investigation. [*Id*. at ¶¶ 44-45]. WNMCF officers also took a number of other punitive measures against her for reporting CO Martinez. [*Id*. at ¶ 49]. She was punished by being placed in segregated housing for 30 days, where she was denied access to recreation for a full week. [*Id*. at ¶ 50]. She also had to forfeit approximately a year's worth of good time credit, lost all privileges such as access to telephone, the commissary, electronic devices, visitation, and was also denied necessary thyroid and anxiety medications. [*Id*. at ¶¶ 50-52].

WNMCF officials knew that CO Martinez and other correctional officers were sexually abusing female inmates but did nothing to stop the violence. [*Id*. at ¶ 54]. For example, Garcia was not CO Martinez' only victim. CO Martinez raped another inmate named Lisa Jaramillo in 2017, and this inmate was also subject to rape and sexual abuse by one of CO Martinez' fellow officers, an officer named Arguello. [*Id*. at ¶¶ 56-57]. Reportedly, there were several WNMCF employees and supervisors, including Officer Amanza, Officer Garcia and Officer Ross, who knew that Officer Arguello was abusing this other inmate, but they did not report him. [*Id*. at ¶ 58]. Ultimately, however, CO Martinez was charged with sexually assaulting and raping Garcia, and was convicted and sentenced. [*Id*. at ¶ 14].

B.     **Count VIII Claims**

Garcia asserts that the State, NMCD and supervisory officers Lucero-Ortega and Perez, who served, respectively, as Warden and Deputy Warden of WNMCF, condoned and fostered this conduct through their policies, practices and customs and failure to investigate and train prison employees. [*Id*. at ¶¶ 106-108].

Garcia asserts that she has suffered physical injury, pain and suffering, lost liberty and psychological and emotional distress from Defendants' conduct and asks that the Court award her monetary damages. [*Id*. at ¶¶ 98, 103, 115]. She also asks that the Court order the State to implement various policies to put an end to the constitutional deprivations she experienced as a prisoner at WNMCF such as retaliation for reporting sexual abuse. *See* [*id*. at ¶ 113(a)-(j), and ¶ 113(b) specifically]. Some of her more concrete requests for prospective injunctive relief include ordering the State to: place sufficient cameras in areas of WNMCF where correctional officers are present with inmates; promptly repair broken or non-functional surveillance cameras in all NMCD facilities; prohibit correctional officers from unilaterally disciplining inmates or changing their work schedules and thereby, create opportunities for abuse through unfettered access to inmates. [*Id*. at ¶113 (g)-(j)].

II.    **STANDARDS OF REVIEW FOR RULE 12(c) AND 12(b)(1) MOTIONS**

A.     **Dismissal for failure to state a claim when presented in a Rule 12(c) Motion**

Rule 12(b)(6) provides that a party may assert a defense of "failure to state a claim upon which relief may be granted" in response to a pleading. Fed.R.Civ.P. 12(b)(6) (2019). Rule 12(b) provides further that such a defense must be asserted by motion before a responsive pleading is

allowed.[2] *Id*. Thus, technically, after an answer is filed it is too late to file a motion to dismiss for failure to state a claim under which relief can be granted. *See In re Vaughan Co., Realtors*, No. 11-10-10759 JA, 2015 WL 4498748, at *1 (Bankr. D.N.M. July 23, 2015)(discussing how Rule 12(b)(6) is made applicable to adversarial proceedings in bankruptcy under Fed.R.Bankr.P. 7012.3, and noting that Rule12(b)(6) technically precludes a defendant from filing a motion to dismiss for failure to state a claim after an answer has been filed; 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 300–01 (2d ed. 1990) ("[A] post-answer Rule 12(b)(6) motion is untimely.").

Once an answer has been filed, a party seeking to assert the defense of the failure to state a claim upon which relief can be granted should file a motion for judgment on the pleadings under Rule 12(c). *In re Vaughan Co.,* 2015 WL 4498748, at *1; *see* also Fed.R.Civ.P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); Fed.R.Civ.P. 12(h)(2)(B) (providing that a party may raise a defense of failure to state a claim: "(A) in any pleading allowed or ordered under Rule 7(a); (B) *by a motion under Rule 12(c)*; or (C) at trial.) (emphasis added). see also *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 n. 2 (10th Cir. 2002) ("Normally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer.... If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings.").

A motion for judgment on the pleadings under Rule 12(c) "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties." *Peňa v.*

---

[2] However, the Rule also provides that: "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." *Id*.

*Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."). In evaluating a Rule 12(c) Motion, the court applies the same standard used to decide Rule 12(b)(6) motions to dismiss. *Inge v. McClelland*, 257 F. Supp. 3d 1158, 1161 (D.N.M. 2017), *aff'd*, 725 F. App'x 634 (10th Cir. 2018); *Ward* 321 F.3d at 1266 ("[w]e review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard applicable to a 12(b)(6) dismissal."). Thus, a court evaluating a Rule 12(c) Motion must accept "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Cheslek v. Chase Bank*, No. CV 15-348 JB/WPL, 2016 WL 10538737, at *1 (D.N.M. Jan. 20, 2016) (quoting *Park Univ. Enters.*, 442 F.3d at 1244).

For purposes of deciding motions under Rule 12(b)(6) and Rule 12(c) motions, "courts typically consider only the facts alleged in the complaint." *Willis v. Smith*, No. 16 CV 167 JAP/LF, 2017 WL 2963873, at *1 (D.N.M. Feb. 13, 2017) (citing *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002)). However, that said, in deciding Rule 12(b)(6) motions and/or Rule 12(c) Motions, courts may review documents referred to in a complaint, if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity. *Id*. Additionally, courts may also take judicial notice of documents that are in the public record. *Id*. (citing *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1190 (D.N.M. 2013)).

B.   **Rule 12(b)(1) Motions**

Rule 12(b)(1) provides that a party may assert the defense of lack of subject matter jurisdiction by a motion. Fed.R.Civ.P. 12(b)(1). Rule 12 provides further that a party does not

8

waive this particular defense by failing to plead it in a motion or responsive pleading. Fed.R.Civ.P.12 (h)(1). Additionally, and if the court becomes aware at any time that it lacks subject matter jurisdiction, it must dismiss the action [or claim]. Fed.R.Civ.P. 12(h)(3).

The U.S. Court of Appeals for the Tenth Circuit has recognized that "A Rule 12(b)(1) Motion may take one of two forms." *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). A party may make what is called a "facial challenge" to the plaintiff's allegations concerning subject matter jurisdiction, which questions the "sufficiency of the complaint." *Rodriguez-Aguirre*, 264 F.3d at 1203 (citation omitted). Or, a party may make a "factual" challenge wherein she "go[es] beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends." *Holt*, 46 F.3d at 1003. (citation and internal quotation marks omitted).

"In addressing a facial attack, the district court must accept the allegations in the complaint as true." *Rodriguez-Aguirre*, 264 F.3d at 1203. And it must construe the complaint in favor of the Plaintiff. Id. (citing *Riggs v. City of Albuquerque*, 916 F.2d 582, 584 (10th Cir. 1990)). In contrast, when a party makes a factual attack, "the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Holt*, 46 F.3d at 1003 (internal quotation marks and citation omitted).

**III.   ARGUMENT**

    **A.   Section 1983 "Monell" claims only apply to local governments. Garcia cannot bring a Section 1983 claim for monetary damages against the State because the State is not considered a "person" for purposes of Section 1983.**

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Thus, Section 1983 creates a private right of action against every "person" who under color of state law either subjects or causes a citizen to be subjected to a violation of federal constitutional or statutory rights. *See Glover*, 899 F. Supp. 2d at 1131 (D.N.M. 2012) (quoting *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002) ("[S]ection 1983 did create any substantive rights, but merely enforces existing constitutional federal statutory rights ...").

Section 1983 does not define the term "person." But the fact that Congress intended for Section 1983 "to provide a remedy for unconstitutional state action does not without more include the sovereign States among those persons against whom § 1983 actions would lie." *Will*, 491 U.S. at 68. And the U.S. Supreme Court concluded long ago that Congress did **not**, in fact, intend for the word "person" to include the States of the Union and to subject them to liability for damages under Section 1983. *See Will*,[3] 491 U.S. at 71 ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Consequently, as a matter of black-letter law, a plaintiff cannot file a Section 1983 claim for monetary damages against a state government or its entities or its officials acting in their official capacities. *See, e.g.*, Order on Motion to Dismiss, [Doc. 27 at 3] in *Ortiz v. State of New Mexico, et al.*, 1:18-cv-00028-JB-LF (D.N.M., Sept. 10, 2018), *available at* https://ecf.nmd.uscourts.gov/cgi-bin/DktRpt.pl?228559719556727-L_1_0-1,

---

[3] This was the only question before the U.S. Supreme Court in *Will*. *See id.* at 61 (noting that the Court accepted certiorari of a decision by the Supreme Court of Michigan holding that a State is not a person under § 1983 because the decision "conflicts with a number of state- and federal-court decisions to the contrary" and "We granted certiorari to resolve the conflict.").

(holding that the State and its entities NMCD and WNMCF are immune from "damages suits for violations of federal constitutional rights because they are not a 'person' within the meaning of 42 U.S.C. § 1983.") (citing *Will*, 491 U.S. at 64).

This may appear to be inconsistent with the U.S. Supreme Court's holding in *Monell v. Dep't of Soc. Svs. of the City of New York*, 436 U.S. 658 (1978), which found that local governments were "persons" for purposes of Section 1983 claims. *See id*. at 690-91 (holding that local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels."). Perhaps, this is why Garcia has captioned Count VIII as a Monell claim.

However, the U.S. Supreme Court explained, finding that a state is not a person for purposes of Section 1983 does not conflict with the holding in *Monell* that a local government is such a person,

> *Monell* itself is not to the contrary. True, prior to *Monell* the Court had reasoned that if municipalities were not persons then surely States also were not. *Fitzpatrick v. Bitzer*, 427 U.S. [445], [] 452, 96 S.Ct [2666], [] 2669 [1976]. And *Monell* overruled *Monroe*, undercutting that logic. But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not, *Monell*, 436 U.S., at 690, n. 54, 98 S.Ct., at 2035, n. 54, and we consequently limited our holding in *Monell* "to local government units which are not considered part of the State for Eleventh Amendment purposes," *ibid*. Conversely, our holding here does not cast any doubt on Monell, and applies only to States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes. *See, e.g., Mt. Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.E.

*Will*, 491 U.S. at 70.

Granted, the U.S. Court of Appeals for the Tenth Circuit has held that the states waive their Eleventh Amendment immunity when they consent to remove suits for monetary damages to federal court even if it is simply to challenge jurisdiction. *See Estes v. Wyoming Dep't of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002). Accordingly, under binding precedent of this Circuit, the State has, by consenting to removal of Garcia's federal claims, waived its Eleventh Amendment immunity to suit in federal court. Nevertheless, as the U.S. Supreme Court took pains to emphasize in *Will*, the scope of Section 1983 is not conterminous with or limited by the scope of the Eleventh Amendment. *See id.* at 66-67 ("This does not mean, as petitioner suggests, that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are."). Rather, the Court explained that the scope of the Eleventh Amendment is a consideration in "deciphering congressional intent as to the scope of § 1983," and as such, the Court would decline "to adopt a reading of § 1983 that disregards it." *Id*.

In view of the aforementioned authorities, Garcia's "Monell" claim is clearly untenable as a matter of law and must be dismissed. Section 1983 does not provide a cause of action under which Garcia may sue the State or its entities for constitutional violations. Because Garcia's Section 1983 claim for monetary damages against the State cannot be cured through an amended pleading, the Court may properly dismiss this claim with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**B.     Garcia lacks standing to seek prospective injunctive relief because her claim is based on speculative future harm, namely that she will be re-incarcerated and subjected anew to sexual abuse and retaliation by prison officers.**

Federal courts are courts of limited jurisdiction. *Kennedy v. Lubar*, 274 F.3d 1293, 1301–02 (10th Cir. 2001). Their jurisdiction is limited by Article III of the U.S. Constitution, which

12

denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). They "may adjudicate only actual, ongoing cases or controversies." *Lewis*, 494 U.S. at 477. "One element of th[is] case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

Standing is a jurisdictional prerequisite. *Dias v. City and County of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009). It generally has three requirements: (1) an allegation that a plaintiff has suffered an "injury in fact" which is "(a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical,' "; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

Whereas a request for retrospective relief can be based on past injuries, a request for prospective relief requires that a plaintiff allege a continuing injury or that she faces a "good chance of being likewise injured in the future." *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

This is where Garcia's claim for prospective injunctive relief fails. She has been released from WNMCF and is no longer in the custody of the State. She has alleged that CO Martinez was criminally charged with sexually abusing and raping her and has been sentenced. Thus, although CO Martinez is before the Court, it is reasonable to infer he is no longer working for the NMCD (i.e., is no longer acting under color of state law). Based on these facts and inferences, Garcia

13

cannot demonstrate that she faces a good chance of being injured in the future by a state correctional officer as she was when she was incarcerated at WNMCF several years ago. To do so, she would have to minimally allege that she is likely to violate the law again, be arrested, convicted and re-incarcerated in the state prison system, where she would once again be subject to sexual abuse, albeit by state actors who are not now before the Court. Additionally, she would have to allege that all state correctional officers sexually abuse female inmates or that the State has ordered or authorized them to do so. Notably, she has not alleged any of these facts. *See* [Doc. 1-1, generally]; *supra* at pp.2-5, § Section I on Relevant Facts. However, even if Garcia were to amend her Complaint to allege such facts, any claim that she is at *imminent* risk of suffering sexual abuse and retaliation again from WNMCF officers[4] would be too speculative. *See Lujan*, 504 U.S. at 564 n.2 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be

---

[4] Garcia asks that the Court order the "State" to implement certain policies. [Doc. 1-1 at ¶ 113]. She does not frame this request as an "Ex parte Young" request to enjoin a particular state officer such as the Warden of WNMCF from engaging in policies or practices that violate federal law. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145-46 (1993) (explaining that the doctrine of Ex parte Young is regarded as carving out an exception to Eleventh Amendment immunity to ensure state officials do not employ that Amendment as a means of avoiding compliance with federal law, and that the doctrine applies only to claims seeking prospective, but not compensatory or other retrospective relief, for ongoing violations of federal law.). Nevertheless, even if Garcia were to plead her request for prospective injunctive relief as an Ex parte Young claim, the claim would still fail for lack of standing. Additionally, Garcia would not be able to show there is a connection between the state officers she has named in her suit and the implementation of specific policies or practices that violate federal law. *See Cressman v. Thompson,* 719 F.3d 1139, 1146 (10th Cir. 2013) (noting that there is a "common thread between Article III standing analysis and Ex parte Young analysis: 'Whether [state] officials are, in their official capacities, proper defendants in [a] suit is really the common denominator of two separate inquiries: first, whether there is the *requisite causal connection between their responsibilities and any injury that the plaintiffs might suffe*r, such that relief against the defendants would provide redress [i.e., Article III standing]; and second, whether ... jurisdiction over the defendants is proper under the doctrine of Ex parte Young, which requires 'some connection' between a named state officer and enforcement of a challenged state law.*'* ") (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)) (emphasis added). The Court may take judicial notice that neither one of the individual supervisory officers who are named in the Complaint--Lucero-Ortega and Perez—are currently responsible for implementing correctional policies at WNMCF. *See* WNMCF's website *at https://cd.nm.gov/nmcd-prison-facilities/western-new-mexico-correctional-facility/* (identifying Leon Martinez and Vincent Vigil as, respectively, the current Warden and Deputy Warden at this Facility); *see also* Fed.R.Evid. 201 (providing that a court may take judicial notice of adjudicative facts (such as facts relating to the parties) that are "not subject to reasonable dispute" because, inter alia, such facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and that a court may take notice of such facts on its own or if a party requests it and supplies the necessary information).

stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.' " and this concept is "stretched beyond the breaking point when. . .the acts necessary to make the injury happen are at least partly within the plaintiff's own control.") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The U.S. Supreme Court's opinion in *City of Los Angeles v. Lyons*, *supra* at p. 2, is instructive here. In *Lyons*, the Court found that a plaintiff who had been subjected to a chokehold during a traffic stop had standing to seek damages for excessive force, but lacked standing to seek an order enjoining the police department from using such chokeholds in the course of future stops. *Lyons,* 461 U.S. at 105. The Court noted that the allegation city police had choked plaintiff during a traffic stop some 5 months before he filed his civil rights suit did nothing to establish there was a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers[5] who would choke him into unconsciousness without any provocation or resistance on his part. *Id*. at 106. Although the plaintiff alleged that the Los Angeles police routinely apply chokeholds in situations where they are not threatened by the use of deadly force, this additional allegation did not alter the Court's analysis. *Id*.

---

[5] *Lyons* is one of a line of U.S. Supreme Court cases in which the Court found the "imminence" of harm was too speculative to infer the plaintiff had standing to seek prospective injunctive or declaratory relief. *See Whitmore v. Arkansas*, 495 U.S. 149, 155–156 (1990) (harm to plaintiff death-row inmate from fellow inmate's execution depended on the court's one day reversing plaintiff's conviction or sentence and considering comparable sentences at resentencing); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (harm rested upon "what one of a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental disciplinary procedures"); *O'Shea v. Littleton*, 414 U.S. 488, 495–498 (1974) (harm from discriminatory conduct of county magistrate and judge was dependent on plaintiffs being arrested, tried, convicted, and sentenced); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (harm to plaintiff was dependent on a former Congressman, who was then serving a 14–year term as a judge, leaving the court and running again for Congress); *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 n.2 (1977) (likelihood of harm was too speculative to support a claim for a declaratory judgment that a Missouri statute authorizing the use of deadly force to apprehend someone who had committed a felony was unconstitutional where the father of a boy who had been killed by the police alleged that he had another son, who "if ever arrested or brought under an attempt at arrest on suspicion of a felony, might flee or give the appearance of fleeing, and would therefore be in danger of being killed by these defendants or other police officers ...").

As the Court explained, to allege an actual case-or-controversy, the plaintiff in *Lyons* would had to have alleged that:

> [H]e would have another encounter with the police but also [] make the *incredible* assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

*Id*. at 106 (emphasis added).

Garcia has the burden of showing she has standing for all her federal claims. *See Lujan* 504 U.S. at 561. As part and parcel of showing she has such standing, Garcia has the burden of adequately alleging a plausible claim of imminent injury to support standing. *See COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016). Garcia has not met that burden, and Defendants submit she cannot even through a curative amendment because as the assertions she would minimally need to make would be too "incredible." *See Lyons*, 461 U.S. at 106. Consequently, the Court should dismiss Garcia's claim for prospective injunctive relief on the ground that she lacks standing and deny her leave to amend as any attempt to cure this jurisdictional defect would be futile. *See Brereton*, 434 F.3d at 1219 (explaining that: "A denial of leave to amend to repair a jurisdictional defect, even on futility grounds, does not call for a dismissal with prejudice", and "The two concepts do not overlap in those cases where, although amendment would be futile, a jurisdictional defect calls for a dismissal without prejudice", and citing cases where courts properly dismissed an action without prejudice for lack of standing or jurisdiction but denied leave to amend claims on futility grounds).

### IV.   CONCLUSION

Garcia has failed to state a legally sufficient claim for monetary damages against the State under Section 1983 because the State is not a "person" for purposes of Section 1983. No

amendatory pleading can correct this defect as it is a matter of black-letter law that Section 1983 does not provide such a cause of action against a state government or its entities. Thus, the Court should dismiss this alleged "Monell" claim with prejudice.

Garcia's claim for prospective injunctive relief against the State is also subject to dismissal, but for jurisdictional reasons. This claim cannot be adjudicated in federal court because it does not present an actual case-or-controversy. Garcia has not alleged and cannot state a plausible claim that she is at imminent risk of future injury due to sexual abuse and/or retaliation at the hands of state prison officers. Her pleadings indicate she has been released from incarceration, and she does not allege she is facing prosecution and possible sentencing on charges that could land her in state custody again. Accordingly, Garcia lacks standing to seek prospective relief, and it would be futile to grant her leave to amend her Complaint as no amendatory pleading can state a plausible claim for relief under this set of facts. Therefore, the Court should dismiss her claim for prospective injunctive relief without prejudice and deny her leave to amend the claim.

**WHEREFORE**, Defendants ask that the Court dismiss Count VIII in its entirety. To that end, Defendants ask more specifically that the Court dismiss Garcia's Monell claim for monetary damages against the State with prejudice, and dismissing her claim for prospective injunctive relief without prejudice but denying her leave to amend the claim.

Respectfully submitted,

ROBLES, RAEL & ANAYA, P.C.

By: /s/ Luis Robles
Luis Robles
Marcus J. Rael, Jr.
Attorneys for Defendants
500 Marquette Ave., NW, Suite 700
Albuquerque, New Mexico 87102
(505) 242-2228
(505) 242-1106 (facsimile)
luis@roblesrael.com
marcus@roblesrael.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3<u>rd</u> day of September, 2019, I filed the foregoing Motion to Dismiss Count VIII electronically via the Court's CM/ECF system which caused all counsel of record to be served with an electronic copy of this Motion.

<u>/s/ Luis Robles</u><br>
Luis Robles