IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VERONICA GARCIA,

    Plaintiff,

    vs.                                                         Civ. No. 19-641 JAP/LF

MICHAEL MARTINEZ, ET AL.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On May 14, 2019, Plaintiff Veronica Garcia filed a COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS, VIOLATIONS OF THE FIRST AMENDMENT, ASSAULT, BATTERY, AND VIOLATIONS OF THE NEW MEXICO CONSTITUTION UNDER THE NEW MEXICO TORT CLAIMS ACT in the First Judicial District Court, County of Santa Fe. *See* NOTICE OF REMOVAL (Doc. No. 1, Ex. A). On July 15, 2019, Defendants Martinez, Lucero-Ortega, Perez, State of New Mexico ("State"), New Mexico Corrections Department ("NMCD"), and Western New Mexico Correctional Facility ("WNMCF") filed a Notice of Removal. *Id.* On August 14, 2019, Plaintiff filed a Motion to Remand alleging untimely filing of Defendants' Notice of Removal. *See* MOTION TO REMAND (Doc. No. 9). On August 31, 2019, Defendants sought amendment of the Notice of Removal to clarify facts that were originally omitted regarding timeliness of removal. MOTION FOR LEAVE TO AMEND THE NOTICE OF REMOVAL ("Motion for Leave") (Doc. No. 14). Because the Court finds that Defendant's removal was timely, the Court will deny Plaintiff's MOTION TO REMAND (Doc. No. 9) and will grant Defendants' MOTION FOR LEAVE TO AMEND THE NOTICE OF REMOVAL (Doc. No. 14).

On September 3, 2019, Defendants also filed a MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO COUNTS I-IV ("Motion on Pleadings") (Doc. No. 15). After

considering the briefing and controlling law, the Court will grant Defendants' MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO COUNTS I-IV (Doc. No. 15).

## Background

Plaintiff Garcia is a former inmate at WNMCF, a prison run by NMCD and the State. Compl. at ¶ 1. During periods of Plaintiff's incarceration in 2012 and 2016–2017, Defendant Martinez, a former corrections officer at WNMCF, repeatedly subjected Plaintiff to sexual abuse. Compl. at ¶¶ 18–38. Defendant Martinez was subsequently tried and convicted for the abuse. Compl. at ¶ 14. Defendants do not contest Defendant Martinez' abuse of Plaintiff. *See* Motion on Pleadings at 3. Defendants Lucero-Ortega and Perez were respectively serving as Warden and Deputy of the facility at the time of the abuse. Compl. at ¶ 4.

Plaintiff's Complaint alleges, as a result of the abuse, Defendants are liable for: (1) sexual assault under the New Mexico Tort Claims Act (NMTCA); (2) sexual battery under the NMTCA; (3) false imprisonment under the NMTCA; (4) violation of the New Mexico Constitution [unspecified deprivation of rights]; (5) violation of the New Mexico Constitution [premises-liability tort claim]; (6) cruel and unusual punishment under 42 U.S.C. § 1983; (7) First Amendment retaliation under 42 U.S.C. § 1983; and (8) 42 U.S.C. § 1983 *Monell* damages and injunctive relief.[1]

## Motion to Remand

Plaintiff Garcia argues that the Court must remand the case under 28 U.S.C § 1447(c) to the First Judicial District Court, County of Santa Fe, because Defendants' Notice of Removal was untimely. *See* Motion to Remand at 2. Plaintiff Garcia asserts that since she served process on Defendants either June 10 or June 11, 2019, Defendants' July 15, 2019 filing of their Notice of

---

[1] The Court has since dismissed Count VIII, the *Monell* claim, upon stipulation by the Parties. *See* STIPULATED ORDER OF DISMISSAL (Doc. No. 26).

Removal was outside the thirty-day window required by the federal removal statute. 28 U.S.C § 1446(b).[2] *Id*.

In response, Defendants contend that the thirty-day removal deadline was not ascertainable at the time of filing, since documentation of the process relating to Defendant NMCD did not have a dated return receipt or a dated delivery confirmation to establish the service date. *See* RESPONSE TO MOTION TO REMAND (Doc. No. 12) at 2. Defendants also argue that the thirty-day deadline had not run when they filed for removal because Defendants Lucero-Ortega and Perez had not been properly served on the June 10, 2019 date alleged by Plaintiff. *Id*. at 3. Defendants reason that since Defendants Lucero-Ortega and Perez waived service of process on July 15, 2019, the removal clock started on July 15, 2019. *Id.* Therefore, Defendants conclude, their July 15, 2019 removal was timely. *Id*.

The date of proper service is the heart of this dispute. A notice of removal must "be filed within thirty days after the receipt by the defendant, through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446. Under the federal removal statutes, "an untimely removal notice constitutes a defect in removal procedure warranting remand." *Armijo v. Flansas*, 2017 WL 6001768, at *2 (D.N.M. 2017) (quoting *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997)). Courts must strictly construe the removal statutes and resolve doubts against removal. *Id.* Additionally, the removing party bears the burden of proving removal was proper. *Id.*

Service is proper when a plaintiff formally serves a defendant a complaint and summons, when a defendant receives a summons and has knowledge of the complaint, or when a defendant

---

[2] Under Plaintiff's calculation, the deadline for proper removal would have been on July 12, 2019. *See* Fed. R. Civ. P. 6; Rule 1-006(A)(1) NMRA (Both include weekends, legal holidays, and the last day of the period but exclude the triggering date).

3

waives service voluntarily. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51 (1999). Without proper service or a waiver, a court may not exercise power over the defendant. *Id.* Failure to properly serve a defendant also prevents the removal clock from running. *Armijo*, 2017 WL 6001768, at *3; *see also Jenkins v. MTGLQ Inv'rs*, 218 Fed. Appx. 719, 724 (10th Cir. 2007) (finding that a notice of removal was timely where defendant was never properly served, so the thirty-day period for filing a notice of removal never commenced).

Rule 4 of the Federal Rules of Civil Procedure spells out proper service procedures and includes the option to follow state service of process rules. *See* Fed. R. Civ. Pro. 4(E)(1). In New Mexico, service may be made by mail that is addressed to the named defendant and signed by the defendant or by the defendant's authorized agent upon receipt. *See* Rule 1-004(E)(3) NMRA. If this is not accomplished, "service of process may be made by delivering a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof and by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment." Rule 1-004(F)(3) NMRA. The federal removal statute also follows the last-served defendant rule, meaning "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." *Id.* at § 1446(b)(2)(C).

Parties do not dispute proper service of Defendants State, WNMCF, or Martinez. Plaintiff personally served Defendant Martinez. *See* Motion to Remand at 2. Plaintiff properly served

4

Defendants State and WNMCF by mail on June 10, 2019. *Id.* Plaintiff's proper service of NMCD is ambiguous, given that the USPS tracking for process on NMCD "appears to not have been updated by USPS . . . [though] the return receipt shows a signature for delivery in Santa Fe." *Id.* Plaintiff "contacted USPS customer service, who indicated that the [NMCD] address was improperly entered in place of the Santa Fe facility address on June 11, 2019." *Id.*; *see also id.* Ex. 2 at 2.

Plaintiff Garcia mailed a copy of the summons and complaint to Defendant Lucero-Ortega on June 5, 2019, addressed care of 'Western Women's Correctional Facility.' Motion to Remand at 1. According to USPS online tracking, the summons and complaint arrived on June 10, 2019, though the return receipt label does not indicate a date received. Motion to Remand, Ex. B at 19–20. Defendant Lucero-Ortega claims she did not work for WNMCF on June 10th and had stopped working there in January 2019. Response to Motion to Remand, Ex. 2 at 2. Defendant Lucero-Ortega claims she actually received service of process on August 7, 2019 but had already waived service under Rule 1-004 NMRA by filing a waiver on July 15, 2019. *Id.*

Similarly, Plaintiff Garcia mailed a copy of the summons and complaint to Defendant Perez on June 5, 2019, at WNMCF. Motion to Remand at 1. According to USPS online tracking, the summons and complaint arrived on June 10, 2019, though the return receipt label does not indicate a date received. Motion to Remand, Ex. 1 at 26–27. Defendant Perez claims he did not work for WNMCF on June 10th, 2019 and had stopped working there in April 2019. Response to Motion to Remand, Ex. C at 2. Defendant Perez claims he never received service of process, but nonetheless waived service under Rule 1-004 NMRA by filing a waiver on July 15, 2019. *Id.*

As previously stated, federal courts must strictly construe the removal statutes and resolve all doubts against removal. *Fajen v. Found. Reserve Ins. Co., Inc*., 683 F.2d 331, 333 (10th Cir.

5

1982). The lack of a firm date for when Plaintiff served Defendant NMCD should be resolved in favor of Plaintiff, and the Court will consider NMCD properly served by June 11, 2019. However, assuming that the sworn declarations of Defendants Lucero-Ortega and Perez are true, Plaintiff did not properly serve either of them under the New Mexico rules or federal rules before July 25, 2019. The processes were not signed by either Defendant. Instead, the processes for both Defendants Lucero-Ortega and Perez were signed by Pam Lujan, who the Defendants claim was not their authorized agent. *See* Motion to Remand, Ex. 1 at 19–20; Motion to Remand, Ex. 1 at 26–27.[3] Additionally, Plaintiff did not deliver "a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof and by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment" under Rule 1-004(F)(3) NMRA. Plaintiff, therefore, did not properly serve Defendants Lucero-Ortega or Perez before July 15, 2019.[4] Because waiver acts as a substitute for service, the removal clock was triggered by Defendants Lucero-Ortega and Perez each filing a waiver of service on July 15, 2019.[5] *See* Fed. R. Civ. P. 4(4) ("When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver"). Accordingly, Defendants' removal was timely and Plaintiff's Motion to Remand will be denied.

---

[3] Plaintiff claims that "[i]t is reasonable to infer that the mail-returns receipts would not have been signed, but for permission by the individual to whom the summons was issued." PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO REMAND at 2. Plaintiff, however, does not make clear how this inference is reasonable given Defendants' declarations to the contrary.

[4] Curiously, on August 7, 2019, Defendant Lucero-Ortega "received a copy of the Complaint and a summons from this Court via USPS mail addressed to her at the Metropolitan Detention Center ("MDC")." This raises a question as to whether Plaintiff believed she properly served Defendant Lucero-Ortega on June 10, 2019.

[5] The Court assumes the other Defendants consented to removal by means of their joint representation by the same counsel. *See State Farm Fire & Cas. Co. v. Dunn-Edwards Corp.*, 728 F. Supp. 2d 1273, 1277 (D.N.M. 2010) (Rejecting the notion that an attorney "may offer consent for anyone beyond her own client(s)." Logic dictates that conversely an attorney may speak for all of her clients in the same case.); *see also Vasquez v. Americano U.S.A., LLC*, 536 F.Supp.2d 1253, 1257 n.2 (D.N.M. 2008) ("Defendant['s] counsel also represents [a co-defendant] in this matter. Thus, [the co-defendant] is considered properly joined.").

**Motion for Leave to Amend the Notice of Removal**

Defendants' filed their Motion for Leave to clarify facts that were originally omitted regarding timeliness of removal. Because the Motion for Leave does not attempt to amend the substance of the notice or the basic facts underlying jurisdiction, the Court will grant the motion to cure the technical defects.

A defendant may freely amend a notice of removal within the thirty-day timeframe after service. *Pub. Serv. Co. of New Mexico v. Lyons*, 1998 WL 36030240, at *1 (D.N.M. 1998). Once the thirty-day period has expired, the defendant may amend the notice of removal to cure procedural and jurisdictional defects, but not to add any substantive allegations. *Id.* Procedural and jurisdictional defects include alleging residency rather than citizenship under diversity jurisdiction. *See Tate v. Acuna*, 2018 WL 4375118, at *2 (D.N.M. 2018). Courts should grant leave so as not to "equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundation." *Lyons*, 1998 WL 36030240, at *1 (citing *Hendrix v. New Amsterdam Cas. Co.*, 390 F.2d 299, 300 (10th Cir. 1968)). In the Tenth Circuit, technical or procedural defects in the notice of removal are not fatal and defendants should be given an opportunity to amend non-substantive removal facts. *May v. Bd. of Cty. Comm'rs for Cibola Cty.*, 945 F. Supp. 2d 1277, 1293 (D.N.M. 2013) (citing *Hendrix*, 390 F.2d at 301).

Defendants' motion falls outside the thirty-day window for amendment without leave of the Court.[6] Defendants' Notice of Removal did not allege lack of proper service, but instead relied on the Defendants Lucero-Ortega and Perez' waiver of service. *See* Motion for Leave at 3. The Notice of Removal specifically states, "[w]ithout [the date of service on NMCD], the State Court record does not contain sufficient information to determine if thirty (30) days have run from the

---

[6] Defendants filed their Notice of Removal on July 15, 2019. Defendants filed their Motion for Leave on August 31, 2019.

date Defendants received copies of the Summons and Complaint in the mail . . . [u]pon information and belief, this Notice of Removal is timely because it is filed within 30 days of service upon Defendants." Notice of Removal at 2. Defendants seek leave to amend so they may "clarify certain facts regarding their compliance with the procedural requirements for removal." Motion for Leave at 1–2.

The Court views Defendants' argument not as a new allegation but instead as an explanation for their original, albeit vague, assertion that the thirty-day clock had not run before removal. Allowing Defendants leave to amend, in order to clarify in more detail as to why the thirty-day clock had not run, follows the Tenth Circuit guidance favoring minor amendments. The Court will grant Defendants' Motion for Leave.

**Motion for Judgment on Pleadings With Respect to Counts I–IV**

Defendants argue that, even accepting all of Plaintiff's allegations as true, the Court must dismiss Counts I-IV with prejudice under principles of sovereign immunity. Motion on Pleadings at 1. Defendants contend that only "law enforcement officers" may be liable for intentional torts committed in the scope of their duties, and none of the Defendants qualify as "law enforcement officers" under section 41-4-12 of the NMTCA. *Id*. at 2.

At any time after the pleadings are closed, but before trial begins, a party may move for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). Courts evaluate a motion for judgment on the pleadings under the same standard used in deciding Rule 12(b)(6) motions to dismiss. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Romero v. United States*, 159 F. Supp. 3d 1275, 1279 (D.N.M. 2015) (citation omitted). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded

8

factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* Courts should dismiss when, from the face of the complaint, it "appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (quotation marks omitted).

*Sovereign Immunity*

Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *McLaughlin v. Bd. of Trustees of State Colleges of Colorado*, 215 F.3d 1168, 1170 (10th Cir. 2000) (citing *Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). An arm of the state may also "assert the Eleventh Amendment as a defense in federal court unless it has waived the defense and consented to suit in federal court." *McLaughlin*, 215 F.3d at 1170. States remain free to waive their immunity to suit. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 (1985).

States may voluntarily waive immunity by statute or by affirmative litigation action, such as removal of claims to federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002). The plaintiffs in *Lapides* brought state-law claims against a state university for which Georgia statutorily waived immunity to suit in state courts. *Id.* at 616. The state university then removed the case to federal court and asserted sovereign immunity on those state-law claims. *Id.* The Court held that by removing a case to federal court, a state implicitly waives its sovereign immunity to state-law claims for which state statutorily waived immunity. *Id.* at 620.
9

The *Lapides* Court, however, left open the question of whether removal waives immunity to associated federal claims or state claims with no underlying statutory waiver of immunity.

The Tenth Circuit answered this question for removal of *Lapides* state-law claims with associated federal claims, finding that such removal "unequivocally invokes the jurisdiction of the federal courts" and waives sovereign immunity entirely. *See Estes v. Wyo. Dept. of Transp.*, 302 F.3d 1200, 1206 (10th Cir. 2002). For state-law claims where the state has *not* waived immunity in state court, the Tenth Circuit takes a "hybrid" approach to removal waiver with respect to 'waiver to suit' and 'waiver of liability.'[7] The Tenth Circuit in *Trant v. Oklahoma* noted that a "state enjoys another kind of sovereign immunity besides immunity from suit that it may invoke even after agreeing to removal—immunity from liability." *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014). State law should determine the nature and scope of a state's immunity in this circumstance. *Id.* (citing *Alden v. Maine,* 527 U.S. 706, 713 (1999)). Under *Trant*, a state may waive immunity to suit by voluntarily removing state-law claims to federal court, but the claims would still be subject to the state's underlying immunity to liability, if such immunity exists.

The present case illustrates this principle well. Plaintiff brought both federal and state-law claims against Defendant State (and arms of the state, NMCD and WNMCF). Defendants voluntarily removed the case to a federal forum. The Tenth Circuit approach commands that Defendant State has waived immunity from suit on all claims, so the Court retains jurisdiction to hear the entire case. The question remains whether the NMTCA's underlying immunity to liability protects Defendant State.

---

[7] In the wake of *Lapides*, circuits split as to whether removal waiver waives all immunity on state law claims, waives no immunity, or (for a majority of circuits) takes a hybrid 'waiver to suit' versus 'waiver of liability' approach. *See* Jessica Wagner, *Waiver by Removal? An Analysis of State Sovereign Immunity*, 102 Va. L. Rev. 549, 553 (2016).

*Liability under NMSA 1978 § 41-4-12*

New Mexico has enacted a limited waiver of liability for common law tort claims against state employees in the NMTCA. *See* NMSA 1978 § 41-4-1 *et seq*. Unless excepted, a "governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort." NMSA 1978 § 41-4-4. The NMTCA waives immunity for intentional torts such as assault, battery, false imprisonment, and deprivation of constitutional rights only when they are committed by law enforcement officers acting within the scope of their duties. NMSA 1978 § 41-4-12. To claim an intentional tort against a public employee, "a plaintiff must demonstrate that the defendant [was a] law enforcement officer[] acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in [the NMTCA] or a deprivation of a right secured by law." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 7, 121 N.M. 646, 916 P.2d 1313.

The principal duties of a public employee determine if they are a "law enforcement officer"[8] under the NMTCA. *See Vigil v. Martinez*, 1992-NMCA-033, ¶ 16, 113 N.M. 714, 832 P.2d 405. New Mexico courts do not consider prison guards and other state corrections officers to be "law enforcement officers" under the NMTCA.[9] *See Callaway v. New Mexico Dep't of Corr.*, 1994-NMCA-049, ¶ 12, 117 N.M. 637, 875 P.2d 393. The *Callaway* court found that the principal

---

[8] The NMTCA defines "law enforcement officer" as "a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." NMSA 1978 § 41-4-3(D).

[9] Plaintiff has requested certification to the New Mexico Supreme Court on the issue of whether "law enforcement officers" under the NMTCA includes corrections officers. *See* PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL MARTINEZ, STATE OF NEW MEXICO, NEW MEXICO CORRECTIONS DEPARTMENT, WESTERN NEW MEXICO CORRECTIONAL FACILITY, ROBERTA LUCERO ORTEGA, AND PETE PEREZ' MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO COUNTS I-IV (Doc. No. 20) at 10. The Court will decline to do so. The New Mexico Supreme Court may "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and *there is no controlling appellate decision*, constitutional provision or statute of this state." NMSA 1978 § 39-7-4 (emphasis added). Because the New Mexico Court of Appeals addressed this question in *Callaway*, this Court declines Plaintiff's request for certification.

duties of prison guards are "to hold in custody persons who have already been convicted rather than merely accused of a criminal offense[.]" *Callaway*, 1994-NMCA-049, ¶ 11. "[M]aintenance of public order relates to a public not a penitentiary setting, and although prison guards may have the supplemental power to arrest [under certain circumstances] . . . their principal statutory duties are those set forth[10] in Section 33-2-15." *Id*. Because Defendant Martinez, as a corrections officer, is not a "law enforcement officer," he remains immune under the NMTCA for intentional torts committed in the scope of his duties.

*Scope of Duties*

The Court also concludes that Defendant Martinez was within his scope of duties when abusing Plaintiff. The NMTCA standard[11] is much broader than the traditional "scope of employment" standard. *See Celaya v. Hall*, 2004-NMSC-005, ¶ 24, 135 N.M. 115, 85 P.3d 239 (citing *Risk Mgmt. Div., Dep't of Fin. & Admin., State v. McBrayer*, 2000-NMCA-104, ¶ 8, 129 N.M. 778, 14 P.3d 43). In *McBrayer,* a New Mexico State University instructor assaulted a student who had visited the instructor's apartment to obtain class assignments. *McBrayer*, 2000-NMCA-104, ¶ 8. "Although of course the attack was unauthorized, the court identified a nexus between the instructor's authorized duties and his after-class interaction with a student seeking class assignments. This connection was sufficient to conclude that the unauthorized attack might fall within the instructor's 'scope of duties' of the [NMTCA]." *Celaya*, 2004-NMSC-005, ¶ 24 (citations omitted). Limiting "scope of duties" to "only those *acts* officially requested, required or authorized . . . would render all unlawful acts, which are always unauthorized, beyond the remedial

---

[10] "The employees of the penitentiary shall perform such duties in the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts as shall be required of them by the corrections division [corrections department] or the warden, in conformity with law and rules and regulations prescribed for the government of the penitentiary." NMSA 1978 § 33-2-15.

[11] The NMTCA defines "scope of duty" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance[.]" NMSA 1978 § 41-4-3(G).

scope of the [NMTCA]." *Id.* ¶ 25 (emphasis in original). The New Mexico Supreme Court concluded, "the [NMTCA] clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Id.*

Whether an employee is acting within the scope of duties is a question of fact. *Celaya*, 2004-NMSC-005, ¶ 28. But the standard is quite broad. *See Peña v. Greffet*, 110 F. Supp. 3d 1103, 1137 (D.N.M. 2015) ("a guard's "scope of duties," on the other hand, includes almost everything he or she does at the facility.") In this case, Parties do not dispute that Defendant Martinez' abuse took place at WNMCF during his time of employment. Assuming Plaintiff's facts alleged are true, Defendant Martinez was well within his scope of duties when abusing Plaintiff. *See* Compl. ¶ 15 ("The forced and coerced sexual abuse and assaults against Ms. Garcia . . . occurred while Defendant Martinez was on duty as a corrections officer."). His abuse, while certainly unauthorized and irrelevant to his employment, falls within the protections of the NMTCA.

*Vicarious Liability*

Plaintiff also claims that Defendants State, NMCD, and WNMCF are vicariously liable for their employees' torts committed by their employees by means of their agency relationship. Compl. ¶¶ 65, 70, 76, 83. A governmental entity remains vicariously liable "for any tort of its employee acting within the scope of duties for which immunity is waived." *Silva v. State*, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 745 P.2d 380. To name a particular entity in an action under the NMTCA requires two things: a liable public employee "who meets one of the [NMTCA] waiver exceptions[]; and [] an entity that has immediate supervisory responsibilities over the employee." *Id.* If a public employee meets an exception to immunity, then the supervising entity, including the state, can be named as a defendant in an action under the NMTCA. *See id.*

Plaintiffs' vicarious liability argument fails because Defendant Martinez does not meet an exception to immunity under the NMTCA. *See Callaway*, 1994-NMCA-049, ¶ 11. Defendants Lucero-Ortega and Perez, as warden and deputy warden, are neither directly liable, since they did not commit the torts, nor vicariously liable for the actions of a non-excepted employee. Defendant State and its agencies NMCD and WNMCF are likewise not vicariously liable for the intentional torts of non-excepted employees.

*Plaintiff's Conditional Motion to Amend Complaint*

Plaintiff proposes that if the Court finds her pleadings unsatisfactory, the Court should grant leave to amend the complaint to clarify how Counts I–IV fall under NMSA 1978 § 41-4-6. *See* PLAINTIFF'S RESPONSE TO DEFENDANT MICHAEL MARTINEZ, STATE OF NEW MEXICO, NEW MEXICO CORRECTIONS DEPARTMENT, WESTERN NEW MEXICO CORRECTIONAL FACILITY, ROBERTA LUCERO ORTEGA, AND PETE PEREZ' MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO COUNTS I-IV (Doc. No. 20) at 12. Courts freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons to not grant leave include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds amendment here would be futile.

A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). The Court cannot conceive of a way that Plaintiff could clear the NMTCA's sovereign immunity hurdle, even through amendment. Plaintiff seeks amendment to style Counts

I–IV as negligence claims under NMSA 1978 § 41-4-6, which waives liability for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Plaintiff requests this despite the fact that Count V, which is not currently disputed, encompasses this very type of alleged premises liability. In fact, Plaintiff asserts Defendant Martinez' acted intentionally, not negligently, in Count III. *See* Compl. ¶ 73.

"[M]ere allegation of negligence does not turn an intentional tort into negligent conduct." *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999). The NMTCA enumerates all of the conduct alleged in Counts I–IV in section 41-4-12, waiving immunity for intentional torts by law enforcement officers. *See* NMSA 1978 § 41-4-12. The Court will not forcibly read negligence into claims sounding in intentional tort. The Court will deny leave for amendment because the intentional torts claims, no matter the style, will not pierce Defendants' sovereign immunity under the NMTCA.

**Conclusion**

The Court finds sufficient evidence to support Defendants' claims they were improperly served, and will allow amendment of the Notice of Removal on those grounds. Consequently, because the improper service did not trigger the removal clock, the Court will deny Plaintiff's Motion to Remand.

The Court also concludes that while the Defendants waived their sovereign immunity to suit by removing this case to federal court, they are protected by the NMTCA's immunity to liability for intentional torts. Because he is not a "law enforcement officer," the NMTCA immunizes intentional tort claims against Defendant Martinez. Likewise, because his supervisors

cannot be vicariously liable for an immunized employee's conduct, the NMTCA protects the remaining Defendants. Plaintiff's intentional tort claims fail as a matter of law because none of the named Defendants meet the statutory definition of "law enforcement officers," and New Mexico has not consented to suit for intentional torts committed by any other form of state employee. Without statutory authorization or other form of consent to liability, the Court cannot grant any relief on Plaintiff's claims. Because Plaintiff has not stated claims upon which this Court may grant relief with respect to Counts I-IV, the Court will grant Defendants' Motion on the Pleadings.

IT IS THEREFORE ORDERED THAT:

1. Plaintiff's MOTION TO REMAND (Doc. No. 9) is DENIED;

2. Defendants' MOTION FOR LEAVE TO AMEND THE NOTICE OF REMOVAL (Doc. No. 14) is GRANTED;

3. Defendants' MOTION FOR JUDGMENT ON PLEADINGS WITH RESPECT TO COUNTS I-IV (Doc. No. 15) is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE