IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA GARCIA,

    Plaintiff,

v.                                                                      1:19-cv-00641-JAP-LF

MICHAEL MARTINEZ,
STATE OF NEW MEXICO and its subsidiary
entities, NEW MEXICO CORRECTIONS DEPT.
and WESTERN NEW MEXICO
CORRECTIONAL FACILITY,
DEFENDANT ROBERT A LUCERO ORTEGA,
Warden at the Western New Mexico Correctional
Facility, and DEFENDANT PETE PEREZ, Deputy
Warden at the Western New Mexico Correctional
Facility,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISQUALIFY AND MOTION TO STAY

THIS MATTER comes before the Court on plaintiff Veronica Garcia's Amended Motion to Disqualify Counsel, filed April 24, 2010. Doc. 60.[1] Defendants Michael Martinez, the State of New Mexico, Robert A. Lucero Ortega, and Pete Perez (collectively "defendants") filed their response to the amended motion on May 18, 2020. Doc. 74. Ms. Garcia filed her reply on June 1, 2020. Doc. 82. The Court held an evidentiary hearing on the motion on June 2, 2020. Doc. 84. On June 7, 2020, defendants filed a notice of supplemental authorities. Doc. 88. Also before the Court is Ms. Garcia's Motion to Stay Proceedings Pending a Final Decision Regarding Disqualification of Conflicted Opposing Counsel, filed April 23, 2020. Doc. 58. Ms. Garcia's motion to stay was fully briefed on June 4, 2020. Docs. 75, 85, 86. The Court, having

---

[1] Plaintiff also filed a notice of errata that included certain exhibits on April 24, 2020. Doc. 61.

read the parties' submissions, including those exhibits presented in camera, and having heard the evidence and the argument of counsel, finds that the motion to disqualify (Doc. 60) is not well taken and will DENY it.  Because the Court has ruled on her motion to disqualify, Ms. Garcia's motion to stay is now moot.

## I. Findings of Fact

Ms. Garcia is represented by Louren Oliveros from the Gorence & Oliveros, PC, law firm ("G&O").[2]  Ms. Garcia filed her complaint in the First Judicial District Court on May 15, 2019.  Doc. 1-1.  Defendants removed the case to this Court on July 15, 2019.  Doc. 1.  Defendants are represented by Luis Robles, Marcus Rael, and Philomena Hausler from the Robles, Rael & Anaya, PC, law firm ("RR&A").  *See* Docs. 2, 3, 21.  Litigation between the parties from July through October of 2019 included Ms. Garcia's motion to remand (Doc. 9), defendants' motion for judgment on the pleadings (Doc. 15), and defendants' motion to dismiss (Doc. 16).  The Court ruled on the parties' motions and granted Ms. Garcia leave to file an amended complaint on October 23, 2019.  Docs. 31, 32.

The Court issued its initial scheduling order on November 8, 2019.  Doc. 34.  Three days later, on November 11, 2019, G&O hired Daniel Grunow as an associate attorney.  Doc. 61-1 at 1.  On December 3, 2019, the parties participated in a meet and confer to formulate the Joint Status Report and Provisional Discovery Plan ("JSR").  Doc. 35.  Mr. Grunow did not participate in the meet and confer.  *Id*. at 1.  The parties participated in the initial scheduling conference on December 17, 2019.  Doc. 38.  Although Mr. Grunow had not entered an appearance on behalf of Ms. Garcia, he participated in the initial scheduling conference as a substitute for Ms. Oliveros.

---

[2] The docket indicates that Ms. Garcia also is represented by Anna Martinez of Aequitas Law, LLC.  The motion to disqualify, however, does not involve Ms. Martinez or Aequitas Law.

*Id*.  Mr. Grunow never entered an appearance on behalf of Ms. Garcia in this case.[3]  On February 19, 2020, immediately after attending a hearing as second chair in another case in which RR&A represented an opposing party, Mr. Grunow informed Ms. Oliveros that he would be resigning his position at G&O and joining RR&A.[4]  Doc. 89 at 10–11, 21, 43.  On March 4, 2020, Mr. Grunow resigned from G&O and ceased his employment with G&O.  Doc. 61-1 at 2.  On March 9, 2020, Mr. Grunow started working for RR&A as an associate attorney.  Doc. 61-1 at 2.

During his approximately four-month tenure at G&O, Mr. Grunow performed some work on behalf of Ms. Garcia.  Mr. Grunow attended meetings with Ms. Garcia by himself and with Ms. Oliveros.  Doc. 74-1 at 2; Doc. 89 at 29–32, 46–47, 50, 53; Doc. 90 at 7–9.  Mr. Grunow also contacted Ms. Garcia through email and by telephone.  Doc. 74-1 at 2–3; Doc. 89 at 47, 51.  Mr. Grunow drafted the initial disclosures and the JSR, and performed some legal research and witness investigation on behalf of Ms. Garcia.  Doc. 74-1 at 2–3; Doc. 89 at 55–57, 67; Doc. 90 at 6–7.  During his various tasks, Mr. Grunow learned confidential information with respect to this case.  Doc. 89 at 50–53; Doc. 90 at 12–13.  In total, Mr. Grunow performed approximately 12 hours of work on Ms. Garcia's case.[5]  Doc. 74-1 at 2–3; Doc. 89 at 48, 50; Doc. 90 at 7, 9–10.

---

[3] "Entry of appearance by a law firm allows any member of that firm to participate in the action; however, each attorney in the firm wishing to receive documents from the Clerk must make a written entry of appearance in the action."  D.N.M.LR-Civ. 83.4(b).

[4] Mr. Grunow's appearance at this hearing appears to raise a potential personal conflict of interest as described in the Committee Commentary to Rule 16-107.  "[W]hen a lawyer has discussions concerning possible employment with an opponent of the lawyer's client, or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client."  NMRA, Rule 16-107 cmt. 10.  But because this transgression occurred in a different case, it is not relevant to Ms. Garcia's motion to disqualify RR&A.

[5] This number is approximated because some of Mr. Grunow's time had to be reconstructed by Ms. Oliveros.  Doc. 74-1 at 2 (some entries labeled "LGO reconstructed time"); Doc. 89 at 27–28.

On March 9, 2020, the same day that Mr. Grunow began working at RR&A, Ms. Oliveros wrote to Mr. Robles and requested that RR&A "agree to take all steps necessary to screen and prohibit access to certain cases to your new associate, Daniel Grunow." Doc. 61-1 at 4. On March 10, 2020, Mr. Robles signed the agreement on behalf of RR&A. *Id*. Ms. Oliveros wrote the same letter to Mr. Grunow. *Id.* at 5. Mr. Grunow, however, refused to sign the letter. *Id*. at 6. Mr. Grunow explained that the New Mexico Rules of Professional Conduct prohibited him from working on cases where there is a conflict of interest, and that he had been screened from those cases. *Id*. Mr. Grunow's refusal to sign the letter proposed by Ms. Oliveros prompted the motion to disqualify. *See* Doc. 60 at 3.

## II. Discussion

A party has a right to be represented by an attorney of his or her own choosing; however, that right is not absolute. *Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 9, 122 N.M. 692, 694, 930 P.2d 1144, 1146. The Court may reject a party's chosen counsel if a compelling reason exists that supports disqualification. *Id*. This Court ascertains whether counsel should be disqualified by looking to the New Mexico Rules of Professional Conduct. *See* D.N.M.LR-Civ. 83.9; *see also Tapia v. City of Albuquerque*, 10 F.Supp. 3d 1171, 1202 (D.N.M. 2014) (citing *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994)). "[T]he burden of establishing that counsel should be disqualified lies with the party seeking disqualification." *Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶ 23, 292 P.3d 466, 472.

The New Mexico Rules of Professional Conduct prohibit an attorney who has formerly represented a client in a matter from representing another person in the same matter in which that person's interests are materially adverse to the former client unless the former client gives consent, in writing. NMRA, Rule 16-109(A); *see also Roy D. Mercer,* 2013-NMSC-002, ¶ 16,

292 P.3d at 469 ("When an attorney leaves one law firm and joins another, the attorney continues to owe a duty of confidentiality and undivided loyalty to his or her clients."). It is undisputed that as an associate at G&O, Mr. Grunow represented Ms. Garcia in this case against the defendants. At the hearing on this matter, Mr. Grunow testified that he received confidential information from Ms. Garcia during various telephone and in-person meetings with her. There is no dispute that Mr. Grunow is disqualified from working on this case as an associate at RR&A because he worked on Ms. Garcia's case at G&O. Doc. 89 at 97. Any work performed on this case by Mr. Grunow as an associate at RR&A would be in violation of Rule 16-109. Ms. Garcia contends, however, that because Mr. Grunow has a conflict of interest, the RR&A law firm also must be disqualified from acting as attorneys for defendants in this lawsuit.[6]

New Mexico Rule of Professional Conduct 16-110 governs the imputation of a conflict to an attorney's law firm and states in relevant part:

> **C. Subsequent firm associations; screening.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in a matter in which that lawyer is disqualified under Rule 16-109(A) or (B) NMRA of the Rules of Professional Conduct unless:
>
> > (1) the newly associated lawyer has no information protected by Rule 16-106 or 16-109 NMRA of the Rules of Professional Conduct that is material to the matter; or
> >
> > (2) the newly associated lawyer did not have a substantial role in the matter, is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this rule.

---

[6] While Ms. Garcia initially appeared to believe that Mr. Grunow could be screened from the case by RR&A, *see* Doc 61-1 at 4–5, she apparently has changed her mind and now argues that Mr. Grunow had a substantial role in the case and screening him is not sufficient. *See generally* Doc. 60.

5#

NMRA, Rule 16-110(C). "In practice, Rule 16–110(C) means that when a law firm hires a new associate, any conflict the associate would have individually, is imputed to the entire firm. This is because 'a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client.'" *Roy D. Mercer*, 2013-NMSC-002, ¶ 17, 292 P.3d at 470 (quoting NMRA, Rule 16–110 cmt. 2). "Once there is (a) a conflict, which is (b) imputed to the new law firm, then disqualification under Rule 16–110(C) is mandatory." *Id.* ¶ 19. There are two exceptions: (1) the newly associated lawyer has no confidential information (information protected by 16-106[7] or 16-109) that is material to the matter; or (2) the newly associated lawyer did not play a substantial role in the matter and is timely screened. *Id*. If the earlier role of the attorney was substantial, no amount of screening can cure the imputed conflict. *Id*.

There is no dispute that Mr. Grunow possesses confidential information from Ms. Garcia that he must not disclose without informed consent. *See* Doc. 89 at 51–53  Ms. Garcia has not given informed consent for Mr. Grunow to disclose any confidential information. Doc. 91 at 4. The first exception of Rule 16-110(C) does not apply. The issue is, therefore, whether the exception under Rule 16-110(C)(2) applies. Ms. Garcia argues that Mr. Grunow played a substantial role in the prosecution of this case and never provided prompt written notice to Ms. Garcia. Doc. 60 at 5; Doc. 82 at 1–5. Defendants, on the other hand, argue that Mr. Grunow did not play a substantial role in Ms. Garcia's case. Doc. 74 at 13–20; Doc. 88. Defendants further

---

[7] Rule 16-106 states in relevant part:

> **A. Disclosure of information generally**. A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by Paragraph B of this rule.

NMRA, Rule 16-106(A).

argue that if the Court determines that Mr. Grunow played a substantial role, Ms. Garcia waived any disqualification prescribed under the rules, and that the equitable doctrines of laches and estoppel should apply to avoid disqualification.  Doc. 74 at 20–24; Doc. 88 at 4–6.  Because I find that Mr. Grunow did not play a substantial role in the case as an associate at G&O, I do not address defendants' other arguments.

The role of an attorney is "substantial" if it is "to a degree or extent that denotes a material matter of clear and weighty importance."  *Roy D. Mercer*, 2013-NMSC-002, ¶ 20, 292 P.3d at 470–71.  "In other words, a firm may continue to represent a current client, if the newly-hired associate had only limited or peripheral involvement in the matter, and an effective screening process is in place."  *Id*.  In *Eberle Design, Inc. v. Reno A & E*, 354 F. Supp. 2d 1093 (D. Ariz. 2005), a case similar to this case, the United States District Court in Arizona addressed whether an attorney played a substantial role as an attorney for his former client in the same matter.  In *Eberle*, an associate attorney at the law firm representing plaintiff accepted a position with the law firm that represented defendants in the same case.  *Eberle*, 354 F. Supp. 2d at 1094.  Subsequently, plaintiff's counsel filed a motion with the court asking that the Court disqualify defendants' counsel if the associate joined the firm.  *Id*.  Arizona's rules of professional conduct are similar to New Mexico's rules of professional conduct in that both require that a law firm be disqualified if a lawyer that becomes associated with that law firm is disqualified unless:

> (1) the matter does not involve a proceeding before a tribunal in which the personally disqualified lawyer had a substantial role; (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule. ER1.10(d)(1)-(3)(2003).

*Id*. at 1095.  Like Mr. Grunow, the newly associated attorney in *Eberle* would be disqualified from representing the defendants because he had obtained confidential information about the plaintiff.  The issue in *Eberle*—as it is here—was whether the newly associated attorney played a "substantial role" in the plaintiff's representation.  *Id*.  The Arizona rules provided that if he did not play a substantial role, defendants' law firm could avoid disqualification by screening him from involvement in the representation of defendants, ensuring that he received no portion of the fees paid by the defendants, and giving the plaintiff written notice that would allow the plaintiff to ascertain the subsequent law firm's compliance with the rules.  *Id*.

Ms. Garcia contends that Mr. Grunow's possession of confidential information from Ms. Garcia establishes that he played a substantial role in the litigation.[8]  The court in *Eberle* rejected this argument.  The *Eberle* court found that the rules "make clear that a lawyer does not undertake a 'substantial role' merely by obtaining confidential and sensitive client information." 354 F. Supp. 2d at 1096.

> [T]he starting place for an ER 1.10(d) analysis—the presumption—is that the lawyer joining the firm acquired confidential and material information about the former client while at his old firm.  The rule then provides that the lawyer's new firm is not disqualified if the lawyer played no substantial role in the former client's representation, provided the requirements of ER 1.10(d)(2) and (3) are complied with by the new firm.

*Eberle*, 354 F. Supp. 2d at 1096–97.  Accordingly, the court determined that to disqualify the newly associated attorney's law firm, the rules required that "the joining lawyer acquired

---

[8] Citing *State v. Barnett*, 1998-NMCA-105, 125 N.M. 739, 965 P.2d 323, Ms. Garcia argues that the confidential disclosures made to Mr. Grunow establishes that he had a substantial role in the litigation.  Doc. 82 at 1–3.  In that case, however, the court was addressing NMRA, Rule 16–111(C), which, as its title suggests, specifically applies to Special Conflicts of Interest for Former and Current Government Officers and Employees.  As this case involves Rule 16-110 and not a former or current government officer or employee, the standards outlined in *Barnett* are not applicable.

material and confidential information about the former client *and* played a substantial role in the former client's case." *Id*. at 1097 (emphasis in original).  I agree with the well-reasoned opinion of the Arizona District Court and find that Mr. Grunow's possession of confidential information does not, in and of itself, establish that he had a substantial role in this case.

As with the New Mexico rules, the Arizona rules state that "'[s]ubstantial' when used in reference to degree or extent denotes a material matter of clear and weighty importance." *Id*. (citing ER 1.0(*l*)); *compare* NMRA, Rule 16–100(M) ("'Substantial' when used in reference to degree or extent denotes a material matter of clear and weighty importance.").  The Arizona District Court explained that "[w]hether a lawyer played a material and weighty role in the former client's representation will depend on the nature and amount of the work he performed, the responsibility he assumed, the degree to which the client relied on him for managing the case, and similar considerations." *Id*.  In *Eberle*, the newly associated attorney

> recorded a total of 9.2 hours over a nine-day period drafting proposed voir dire questions.  He took no part in fact discovery, expert witness preparation or discovery, the *Markman* hearing, summary judgment briefing or argument, or preparation of the proposed pretrial order, motions in limine, or jury instructions.  He assumed no client responsibility and, so far as the Court can determine, never communicated with the client or opposing counsel.

*Id.*

In contrast, the attorney at issue in the *Roy D. Mercer* was substantially involved in plaintiff's case prior to being hired at defendants' attorney's law firm.  In *Roy D. Mercer*, the attorney had worked for plaintiff on a motion to remand when the case was pending in federal court.  *Roy D. Mercer*, 2013-NMSC-002, ¶ 4, 292 P.3d at 467–68.  The court ultimately granted the motion to remand, and although the attorney did not enter an appearance in state court, she continued to work on the case.  *Id*., 2013-NMSC-002, ¶ 5, 292 P.3d at 468.  During the state

court proceedings, the attorney was privy to all strategy and case management decisions, as well as privileged communications from her client. *Id.* The attorney was involved in strategy meetings with the plaintiff and co-counsel and was active in investigative efforts, discovery, and communication with experts, and also attended court hearings on plaintiff's behalf. *Id.* The attorney's billing records show that she was involved in the case for nine months in the state court action after her initial involvement in federal court. *Id.*, 2013-NMSC-002, ¶ 29, 292 P.3d at 473. While the case was pending in state court, the attorney began working for defendants' law firm. *Id.*, 2013-NMSC-002, ¶ 7, 292 P.3d at 468. Under these circumstances, the court found that the attorney had played a substantial role on the other side in the same matter, which required disqualification of the entire law firm. *Id.*, 2013-NMSC-002, ¶¶ 30–32, 292 P.3d at 473.

  The facts of this case are more similar to those of *Eberle* than *Roy D. Mercer*. In this case, Mr. Grunow was involved in drafting the initial disclosures and the JSR. He met with Ms. Garcia in person and over the phone. He learned confidential information regarding Ms. Garcia's case. But Mr. Grunow did not participate in fact discovery, expert witness preparation or discovery, motions practice, or trial preparations. Mr. Grunow's meetings with Ms. Garcia were brief, and he never assumed responsibility for representing her. Over four months of working at G&O, Mr. Grunow spent only about 12 hours working on Ms. Garcia's case. Based on these facts, I find that Mr. Grunow did not have a substantial role in the prosecution of Ms. Garcia's claims in this case.

  Whether Mr. Grunow had a substantial role in this case does not end the inquiry under Rule 16-110(C). The Court also must satisfy itself that the other elements of the exception under Rule 16-110(C)(2) are present. As noted above, the exception to disqualification applies when

(1) the newly associated lawyer did not have a substantial role in the matter, (2) is timely screened from any participation in the matter and is apportioned no part of the fee therefrom, and (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this rule.

Having determined that Mr. Grunow did not have a substantial role in the matter, the Court also finds that he was timely screened from any participation in the matter and has been apportioned no part of the fee therefrom. Mr. Robles explained that his law firm performs work representing government entities, including the day-to-day operations and litigation. Doc. 89 at 11–12. Mr. Robles heads the litigation section while Mr. Rael handles the operations. *Id*. at 12. Mr. Robles further explained that he was not involved in Mr. Rael's search for an associate or the hiring of Mr. Grunow, that Mr. Grunow was hired to do work that had nothing to do with litigation, and Mr. Robles only learned of Mr. Grunow's employment at RR&A after Mr. Rael hired Mr. Grunow. *Id*. at 12–13. Mr. Robles described how he made "invisible all of the firm's files to Daniel Grunow that involved . . . Ms. Oliveros and her firm," that "Mr. Grunow sits on the other side of the building from the folks who do litigation," does not share staff or a copier with the litigation section, and Mr. Robles would not have any interactions with Mr. Grunow about litigation, and particularly this case. *Id.* Additionally, Mr. Grunow confirmed that he has not revealed any of the confidential information he learned from Ms. Garcia to anyone at RR&A or spoken to anyone at RR&A about this case. *Id.* at 60, 62, 63–64. Thus, Mr. Grunow was timely screened from any participation in the matter after being hired at RR&A.

Further, Mr. Grunow has not been apportioned any part of the fee derived from this case. As an associate attorney at RR&A, Mr. Grunow receives a salary. Doc. 89 at 46, 64. The Committee Commentary to Rule 16-110 explains that "[s]ubparagraph (C)(2) of this rule does

11#

not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified." NMRA, Rule 16-110 cmt 8.  There is no evidence that, as a salaried employee, Mr. Grunow has or will receive compensation directly related to this matter.

Finally, written notice was promptly given to Ms. Garcia that enabled her to ascertain compliance with the provisions of this rule.  Ms. Oliveros argues that Ms. Garcia never received written notice.  Doc. 89 at 96.  However, on March 9, 2020—the day Mr. Grunow started his employment at RR&A—Ms. Oliveros sent a letter to RR&A asking Mr. Robles to ensure that his firm "take all steps necessary to screen and prohibit access to certain cases to your new associate, Daniel Grunow."  Doc. 61-1 at 4.  Mr. Robles signed the agreement "on behalf of Robles, Rael & Anaya, PC" on March 10, 2020 and returned it to Ms. Oliveros.  *Id*.; Doc. 89 at 14, 17.  This letter satisfies the written notice requirement.  All the requirements of Rule 16-110(C) that form the exception to the imputation of disqualification for the RR&A law firm are met in this case.  Accordingly, the Court will not disqualify RR&A.  It therefore is unnecessary for the Court to address defendants' waiver or laches and estoppel arguments.

Although the Court finds that the requirements of Rule 16-110(C) are met and that RR&A is not disqualified from representing defendants in this case, the Court is troubled by how this matter came to fruition.  It is inexcusable that RR&A did not take steps prior to hiring Mr. Grunow to assure Ms. Garcia that her confidences would be protected.  Although Mr. Robles explained that Mr. Rael hired Mr. Grunow and that Mr. Rael works only on non-litigation matters, Mr. Rael entered an appearance in this case on July 15, 2019, and is listed as a "Lead Attorney" on the Court's docket.  *See generally* CM/ECF Civil Docket for Case #: 1:19-cv-

00641-JAP-LF; *see also* Doc. 3.  The Court notes, however, that Mr. Rael has not appeared at any hearing on behalf of defendants in this case and has not signed any of the pleadings, motions, or other papers filed by defendants, except for his notice of appearance.  Nevertheless, Mr. Rael should have been aware of the conflict prior to hiring Mr. Grunow—presumably having reviewed Mr. Grunow's resume (Doc. 74-3)—and should have proactively pursued a course of action that avoided placing his law firm in the perilous position in which it finds itself in this case, and perhaps others.

Mr. Grunow's behavior in handling his transition from G&O to RR&A also is troubling.  Mr. Grunow informed Ms. Oliveros that he was resigning from her firm after sitting second chair at a hearing at which RR&A was opposing counsel.  Doc. 89 at 10–11, 21, 43.  In other words, Mr. Grunow apparently represented a client while knowing he was accepting a position with opposing counsel.  Further, while this Court finds that the letter sent by Ms. Oliveros and signed by Mr. Robles satisfies the written notice requirement of Rule 110(C), the written notice should have been initiated by Mr. Grunow and RR&A given that they both knew that RR&A was opposing counsel on several pending cases against G&O.  As the New Mexico Supreme Court explained,

> The Rules of Professional Conduct lay out a clear and detailed process for law firms that wish to hire an associate.  Such firms have an obligation to contact opposing counsel to ascertain whether the prospective associate possesses confidential information material to a particular case or whether the associate played a substantial role in a particular case.  If the answer to *either* of these questions is yes, *the hiring law firm* should ask the former client for a waiver of the conflict pursuant to the applicable Rules of Professional Conduct.  *See* Rules 16–109(A); 16–109(B)(2); 16–110(D).  If it cannot obtain a waiver, the law firm proceeds at its own peril.

*Roy D. Mercer*, 2013-NMSC-002, ¶ 43, 292 P.3d at 475–76 (emphasis added).  Not only did Mr. Grunow not initiate written notice, he refused to sign the letter sent to him by Ms. Oliveros to

make assurances to Ms. Garcia.  Doc. 61-1 at 6.  Mr. Grunow's behavior demonstrates a misunderstanding of his obligations to his client, at best.  Nevertheless, because Mr. Grunow did not play a substantial role in Ms. Garcia's case, and because the other elements of the exception stated in Rule 16-110(C)(2) have been met, the Court will deny the motion to disqualify RR&A in this case.

IT IS THEREFORE ORDERED THAT plaintiff Veronica Garcia's Amended Motion to Disqualify Counsel, filed April 24, 2020 (Doc. 60), is DENIED.

IT IS FURTHER ORDERD THAT plaintiff Veronica Garcia's Motion to Stay Proceedings Pending a Final Decision Regarding Disqualification of Conflicted Opposing Counsel filed April 23, 2020 (Doc. 58), is DENIED as moot.  The Court will, however, grant a 30-day extension of time for discovery deadlines that have not yet past to account for the short delay caused by the filing and resolution of the motion to disqualify.  The case management deadlines will be extended in a separate order.

*Laura Fashing*
Laura Fashing
United States Magistrate Judge